**Jian GUO, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–73527.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2004.

Filed March 23, 2004.

Edisson Der Hovakemian, Global American Attorney Group, APLC, Pasadena, CA, for the petitioner.

Margaret K. Taylor, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

Before: ALARCÓN, BEEZER, and W. FLETCHER, Circuit Judges.

ALARCÓN, Circuit Judge:

Jian Guo petitions for review of the Board of Immigration Appeals's ("BIA's") decision to deny his application for asylum and withholding of removal under 8 U.S.C. § 1231(b)(3)(A), and Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, opened for signature Feb. 4, 1985, S. Treaty Doc. No. 100–20, at 20 (1988), 23 I.L.M. 1027, 1028 (1984) ("Convention Against Torture"). We grant the petition for review because we conclude that the Immigration Judge's ("IJ's") credibility findings and his finding that Mr. Guo was not subjected to past persecution are not supported by substantial evidence. We remand to the agency for further proceedings to determine whether Mr. Guo has a well-founded fear of future persecution.

I

Mr. Guo was born on June 8, 1967 in Liaoning, China. He is a citizen of the People's Republic of China. He entered the United States on a non-immigrant B–1 visa for business purposes, which authorized him to remain in the United States temporarily until April 15, 2000.

On February 1, 2001, the Immigration and Naturalization Service ("INS") issued a notice to appear to Mr. Guo alleging that he was subject to removal from the United States because he had remained in this country longer than permitted by the non-immigrant visa without authorization from the INS. Mr. Guo appeared at his removal proceedings on March 12, 2001.

Through his counsel, Mr. Guo admitted the allegations contained in the notice to appear and conceded that he was subject to removal. His counsel also informed the IJ that Mr. Guo was seeking asylum, withholding of removal, and application of the Convention Against Torture. The removal proceedings were held on August 2, 2001.

Mr. Guo testified to the following. He came to the United States because he was persecuted by the Chinese government for believing "in Jesus Christ and Christianity." He became a Christian in China in October of 1998, prior to entering the United States. He was baptized as a Christian by his Chinese pastor in January of 1999.

On September 18, 1999, Chinese police entered Pastor Wang Kefei's home while he was conducting church services and arrested Mr. Guo and other members of his congregation for participating in an illegal religious activity. Mr. Guo was detained at the Lin Hen police station for a day and a half. He was asked to admit that he had participated in an illegal religious gathering. He was also told: "[Y]ou cannot believe in this evil religion anymore." When Mr. Guo replied that "it is my freedom to believe in Christianity," a police official struck him twice in the face, and ordered him to do push ups until he could no longer stand it. While he lay on the floor, he was kicked in the stomach. Mr. Guo was told that he would be persecuted unless he signed an affidavit promising not "to believe in such a[n] evil religion again." Mr. Guo signed the affidavit to avoid further abuse. Another member of Mr. Guo's congregation who was arrested with him died of a heart attack three or four days after she was released.

On September 26, 1999, Mr. Guo and other church members gathered at the tomb of a fellow congregant. They were approached by the police. When Mr. Guo saw a police officer attempting to remove a cross from the tomb, Mr. Guo tried to stop

him. The officer then used an electrically-charged baton to subdue Mr. Guo. Two police officers held his arms and kicked his legs causing him to fall. Following this encounter, Mr. Guo was removed to the Ying Chow District police station. There, the officer that Mr. Guo had pushed to prevent the removal of the cross hit him in the face seven or eight times. Mr. Guo was also tied to a chair and beaten with a plastic pole. He was released after being detained for fifteen days.

After he was released, Mr. Guo's employment was terminated on October 20, 1999, "[b]ecause they say I commit a crime." He was unable to procure other employment in China prior to entering the United States on March 5, 2000.

Mr. Guo testified that his real purpose in obtaining a nonimmigrant B–1 visa was to escape persecution in China because of his religious beliefs. Mr. Guo stated that he cannot return to China because he believes in Christianity. After he arrived in the United States, Mr. Guo called his wife in China. She told him that Chinese officials knew he was in the United States. She also informed him that Pastor Kefei had been arrested again. Mr. Guo further testified that he read a news article that reported that a nineteen-year-old Christian had been arrested and beaten to death because of his religious beliefs.

Mr. Guo became a member of the Chino Hills Chinese Church after his arrival in the United States. In an apparent attempt to test the sincerity of his Christian faith, the IJ asked Mr. Guo to recite the Lord's Prayer. Mr. Guo's response in Mandarin was interpreted as follows:

Our father in Heaven. Hollow be thy name and kingdom come and you will be then our earth's name. It is in heaven and give us this day our daily bread and forgive our endeavors like we forgive others' endeavors and do not lead us to temptation, but deliver us from evil.

For you are the kingdom, the power, forever yours. Amen.

After Mr. Guo recited the Lord's Prayer, the IJ asked the appellant: "What are the ten commandments?" The interpreter's translation reads as follows:

The first you cannot believe other God and you cannot worship other God. Sunday is the holy day and you cannot call God's name. You have to respect your parents. You cannot commit adultery. You cannot commit murder. You cannot give false testimony and you cannot give false testimony to someone else. You cannot lust for other people's property.

Following Mr. Guo's testimony, Mr. Guo's counsel informed the IJ that he intended to call Peter Shiau, the pastor of the Chino Hills Chinese Church, as a witness. The IJ stated that it would not be necessary to present a witness to prove that Mr. Guo was "a Christian now and he goes to church now." In response, counsel informed the IJ that Pastor Shiau would be called to testify regarding Mr. Guo's believability as a witness, "not about [his] being a Christian."

Pastor Shiau testified that he met Mr. Guo on March 19, 2000. Mr. Guo became a member of his church in November of 2000. He was baptized on the same date. Pastor Shiau also testified that Mr. Guo had accepted Jesus Christ before his baptism in the Chino Hills Church. Pastor Shiau stated that Mr. Guo was "a faithful believer" who attends church every Sunday, and is the director of a study class for immigrants from mainland China.

The INS did not present any evidence to rebut Mr. Guo's testimony that he had been subjected to persecution in China because of his religious beliefs, and that he has a well-founded fear that he will be persecuted if he is removed to China. The IJ denied Mr. Guo's application for asylum, withholding of removal, and relief un-

der the Convention Against Torture. The IJ found that Mr. Guo's testimony that he was persecuted in China because of his religious beliefs was not credible. Alternatively, the IJ found that even if his testimony was accepted as truthful, Mr. Guo had not demonstrated that he had suffered past persecution because of his religious beliefs.

Mr. Guo filed a timely notice of appeal of the IJ's decision to the BIA. The BIA affirmed the decision of the IJ without opinion pursuant to 8 C.F.R. § 3.1(a)(7) (redesignated as 8 C.F.R. § 1003.1(a)(7) (2003)). The BIA accepted the IJ's decision as the final agency determination. We have jurisdiction over this timely-filed petition for review pursuant to 8 U.S.C. § 1252(a).

## II

Mr. Guo contends that his petition for review should be granted because substantial evidence does not support the IJ's finding that his testimony was not credible. He argues that "there was no evidence or contradiction offered by the INS that Guo's testimony was less than truthful as to the detention and beating he had received on account of becoming a practicing Christian as early as January of 1999." Pet'r Opening Br. at 13. Mr. Guo also argues in his opening brief that, "neither the Board nor the Immigration Judge pointed to any specific reasons for rejecting Guo's testimony." *Id.* at 21. Thus, contrary to the Government's contention, the question whether the IJ's credibility findings support the denial of Mr. Guo's application was sufficiently argued in his opening brief to present this issue for our review. *See Martinez–Serrano v. INS*, 94 F.3d 1256, 1260 (9th Cir.1996) (holding

that petitioner had waived an issue not argued in his opening brief).[1]

We review adverse credibility findings under the substantial evidence standard. *Osorio v. INS*, 99 F.3d 928, 931 (9th Cir.1996). An applicant's credible testimony, standing alone, may be sufficient to establish a claim of persecution. 8 C.F.R. § 208.13(a); *Ladha v. INS*, 215 F.3d 889, 890 (9th Cir.2000). To support an adverse credibility finding, the BIA or the IJ must demonstrate "a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Osorio*, 99 F.3d at 931. "Conjecture and speculation can never replace substantial evidence as the basis for an adverse credibility finding." *Maini v. INS*, 212 F.3d 1167, 1175 (9th Cir.2000). "Generally, minor inconsistencies, and minor omissions relating to unimportant facts will not support an adverse credibility finding." *Leon–Barrios v. INS*, 116 F.3d 391, 393 (9th Cir.1997). We independently evaluate each ground cited by an IJ for his or her adverse credibility findings. *Wang v. Ashcroft*, 341 F.3d 1015, 1021 (9th Cir.2003).

### A.

The IJ found that Mr. Guo's testimony that he was a Christian *before* he entered the United States was not credible. In this respect, the IJ stated: "The Court does not believe that the respondent has provided any credible proof that the government authorities in China are interested in harming the respondent upon his return to China because of his past religious beliefs or because of his recent religious beliefs and conversion." The IJ further concluded that "the Court is inclined to believe that the respondent began prac-

1. Mr. Guo did not present his claims under the Convention Against Torture to the BIA. Because he has not exhausted his administra-

tive remedies, we cannot address whether he might qualify. *Khourassany v. INS*, 208 F.3d 1096, 1099 (9th Cir.2000).

1200

ticing Christianity not in China, but shortly after he arrived here in the United States." The IJ based this conclusion on the testimony of Pastor Shiau.

The record of the removal hearing includes the following colloquy between the IJ and Pastor Shiau:

> Q. So, as far as you know then, prior to the baptism, do you know if the respondent had ever accepted Jesus Christ prior to that or if it occurred prior to the baptism, in terms of a formal way?
>
> A. Yes, *before that.*
>
> Q. When?
>
> A. And we asked him some questions.
>
> Q. So was this his first baptism *as far as you know?*
>
> A. Yes.

(Emphasis added.)

Pastor Shiau's ambiguous testimony regarding whether Mr. Guo became a Christian before he entered the United States is subject to several possible interpretations: 1) Mr. Guo did not become a Christian before he was baptized by Pastor Shiau. 2) Mr. Guo was a Christian before he was baptized by Pastor Shiau. 3) Pastor Shiau had no personal knowledge regarding whether Mr. Guo had been previously baptized as a Christian in China.

Pastor Shiau was Mr. Guo's final witness. The IJ did not indicate, prior to final argument, that Mr. Guo's testimony that he became a Christian in China was contradicted by Pastor Shiau's testimony, nor did the IJ recall Mr. Guo to explain whether he had accepted Christ in China with or without a "formal" baptism.

We have previously determined that unclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony. *See He v. Ashcroft,* 328 F.3d 593, 602 (9th Cir.2003) (holding that an adverse credibility finding was not supported by substantial evidence where the applicant gave a "vague description of the elapsed time," "was not cross-examined about the timing of events, [and] had no reason or opportunity to explain what he meant"). In inferring from Pastor Shiau's testimony that Mr. Guo did not become a Christian or that he was not formally baptized in China, the IJ not only interpreted ambiguous testimony in a manner unfavorable to Mr. Guo, she also assumed facts that were not within Pastor Shiau's personal knowledge. Such speculation is impermissible. *Bandari v. INS,* 227 F.3d 1160, 1167 (9th Cir.1999) ("[C]onjecture and speculation can never replace substantial evidence."). Because the IJ based her adverse credibility finding on testimony that was unclear, without affording Mr. Guo an opportunity to explain whether he had been baptized as a Christian in China, and, if not, whether he was persecuted because of his acceptance of Christianity as his religion, the finding is not supported by substantial evidence.

B.

The IJ also found that Mr. Guo was not credible because he failed to corroborate his testimony that he was fired from his job after he was released from his second detention. Mr. Guo testified that he received a certificate of dismissal but that the document was in China.

The IJ commented that "this a[sic] very important document that the respondent could have presented to further corroborate his claim." The IJ also stated that Mr. Guo had not explained in a credible manner the lack of any documentary evidence regarding the termination of his employment.

 The IJ's insistence here on corroborating evidence was inappropriate.

We have held that "supplying corroborating evidence is not required to establish an applicant's credibility." *Chebchoub*, 257 F.3d at 1044. "Requiring an applicant to present corroborating evidence would make it 'close to impossible for [any political refugee] to make out a ... case [for asylum].' " *Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996) (quoting *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984)) (alterations in original). However, when an applicant's credibility is in question, and he or she fails to produce evidence that is "non-duplicative, material, and easily available" the IJ or BIA may make an adverse credibility finding. *Sidhu v. INS*, 220 F.3d 1085, 1092 (9th Cir. 2000). The certificate of dismissal was not "easily available" to Mr. Guo on the hearing date, because it was in China. *See id.* at 1091–92 ("[I]t is inappropriate to base an adverse credibility determination on an applicant's inability to obtain corroborating affidavits from relatives or acquaintances living outside of the United States—such corroboration is almost never easily available.").

### C.

█ The IJ also based her adverse credibility finding on the fact that Mr. Guo testified he could not remember the name of the company that he had written on his B–1 visa application. The IJ found that it was not credible that Mr. Guo would be unable to remember this information. We have held, however, that "[i]nconsistencies in the petitioner's statements must go to the 'heart of [his] asylum claim' to justify an adverse credibility finding." *Singh v. Ashcroft*, 301 F.3d 1109, 1111 (9th Cir. 2002) (quoting *Chebchoub*, 257 F.3d at 1043) (alterations in original). Mr. Guo testified that he did not work for the company whose name he used in his application. Instead, he stated that he claimed to be employed by a company as a pretext to obtain entry in to the United States. His lack of memory of the company he claimed to work for to obtain a B–1 visa does not go to the heart of his asylum claim, which involved persecution for his Christian beliefs.

### D.

█ The IJ also found that Mr. Guo's testimony about his motive for traveling to the United States was not credible, but failed to comment on Mr. Guo's explanation regarding the statements on his B–1 visa application. The IJ found it "completely incredible" that Mr. Guo was using the B–1 visa as a pretext for asylum, when Mr. Guo went to a meeting in the United States on behalf of the company whose name he used to gain entry under the B–1 visa. Yet Mr. Guo explained to the IJ that he went to the meeting—even though he did not actually work for the company—because the friend who had arranged for his escape from China advised him he should. Mr. Guo explained he went "[b]ecause this company advised three of us to come to the U.S. and my friend say if you don't go then that is a bad impression." The IJ, however, did not address at all Mr. Guo's reasonable and plausible explanation. The alleged inconsistency in Mr. Guo's testimony therefore cannot serve as substantial evidence for an adverse credibility finding. *Id.* at 1013. An adverse credibility finding is not based on substantial evidence when "[t]he BIA[or the IJ] did not comment on [an applicant's] explanation, nor suggest any reason that it found his explanation not credible." *Garrovillas*, 156 F.3d at 1013.

### E.

█ The IJ further found that Mr. Guo was not credible because he did not apply for asylum immediately upon entering the

United States, but instead waited and filed for an extension of his B–1 temporary visa before seeking asylum. The IJ commented that "[t]he Court is inclined to believe that the respondent thought about applying for asylum as an afterthought."

Such "conjecture and speculation" cannot substitute for substantial evidence. *Maini,* 212 F.3d at 1175. In addition, we have held that "[u]ntrue statements by themselves," like those Mr. Guo made to extend his B–1 visa, "are not reason for refusal of refugee status." *Turcios v. INS,* 821 F.2d 1396, 1400 (9th Cir.1987). Indeed, Mr. Guo's "misrepresentations are wholly consistent with his testimony and application for asylum: he did so because he feared deportation to[China]." *Id.* at 1400–01; *see also Akinmade v. INS,* 196 F.3d 951, 955 (9th Cir.1999) (quoting *Turcios,* 821 F.2d at 1400–01). Thus, the IJ's conjecture that Mr. Guo applied for asylum as an afterthought based on his failure to apply for asylum upon entering the United States does not support the IJ's adverse credibility finding.

The IJ based her adverse credibility findings on vague and ambiguous testimony, a lack of corroborating evidence where none was required, and impermissible conjecture and speculation. We are compelled to conclude that the factual findings underlying the IJ's adverse credibility determination were not supported by substantial evidence. 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

## III

In an alternative holding, the IJ held that "[e]ven if it is determined that the respondent has testified in a credible and forthright manner, the Court does not believe the two arrests that the respondent allegedly experienced in China in 1999 in any way constitute past persecution on account of any of the five enumerated grounds." The IJ found that "the first arrest was merely an effort of the police to harass the respondent." The IJ further stated that "the second arrest was due to the respondent beginning an altercation with the police." The IJ also found that Mr. Guo's first detention did not amount to persecution because (1) the detention was short—only a day and a half—and (2) Mr. Guo was only "slapped" twice and forced to do push-ups during the detention.

The record does not support the IJ's factual findings. Mr. Guo testified that he was punched in the face, not "slapped." Mr. Guo also testified that he was kicked in the stomach. The record also shows that Mr. Guo was coerced to sign a paper saying that he would no longer believe in Christianity.

 To establish eligibility for asylum, an applicant is required to demonstrate that he or she is a "refugee" within the meaning of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(42)(A). The Attorney General has the discretion to grant asylum to aliens who qualify as refugees. 8 U.S.C. § 1158(b)(1). The INA defines a "refugee" as "any person who is . . . unable or unwilling to return to . . . [his or her home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

 To establish eligibility for withholding of removal, an applicant must meet "a more stringent" standard of proof than is required for asylum. *Navas v. INS,* 217 F.3d 646, 655 (9th Cir.2000). The applicant must establish a " 'clear probability' that he would be persecuted were he to be

deported to his home country." *Id.* The applicant must prove "it is more likely than not that [he or she] will be persecuted on account of a statutorily-protected ground." *Id.* (internal quotation marks omitted).

██ In determining whether an applicant was subjected to past persecution, we review the record for substantial evidence. *Mendez–Gutierrez v. Ashcroft,* 340 F.3d 865, 869 n. 6 (9th Cir.2003) (stating that this court "must affirm the BIA's finding on eligibility for asylum if it is supported by substantial evidence"). Having found that the IJ's determination was not supported by substantial evidence, we accept Mr. Guo's testimony as true. *Chen v. INS,* 266 F.3d 1094, 1101 (9th Cir.2001), *vacated on other grounds by INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002); *see also Wang,* 341 F.3d at 1023 (accepting asylum applicant's testimony as true after determining that the IJ's adverse credibility finding was not supported by substantial evidence); *He v. Ashcroft,* 328 F.3d 593, 604 (9th Cir.2003) (declining to remand the case for further investigation of credibility because "[t]he INS, having lost the appeal, should not have repeated opportunities to show that[the applicant] is not credible any more than [the applicant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility").

██ We look at the totality of the circumstances in deciding whether a finding of persecution is compelled. *Korablina v. INS,* 158 F.3d 1038, 1044 (9th Cir. 1998) ("The key question is whether, looking at the cumulative effect of all the incidents a petitioner has suffered, the treatment[he or] she received rises to the level of persecution."). Mr. Guo was physically harmed during his first detention. Mr. Guo was detained for a day and a half and

coerced into signing a document saying he would no longer believe in Christianity. The totality of the circumstances compels a finding that Mr. Guo was persecuted during his first detention because of his religious beliefs.

██ The IJ found that Mr. Guo's second detention did not bear a nexus to Mr. Guo's practice of religion, and thus could not constitute persecution. The IJ focused on Mr. Guo's attempt to stop the Chinese police from taking down a cross from a tomb. The IJ determined that Mr. Guo was detained and beaten solely because he initiated an altercation with the police.

We have held "that resistance to discriminatory government action that results in persecution is persecution on account of a protected ground." *Chand,* 222 F.3d at 1077 (holding that an applicant was persecuted "on account of" race when he and his father challenged soldiers who only collected taxes from people of a certain race, and were subsequently beaten by the soldiers).

Like the applicant in *Chand,* Mr. Guo's resistance to discriminatory government action resulted in his persecution. Mr. Guo resisted discrimination by trying to stop the Chinese police from removing a cross from a tomb during a funeral. The police then beat Mr. Guo and detained him for fifteen days. This treatment rises to the level of persecution on account of his religion, one of the five enumerated grounds for the establishment of refugee status. The IJ's finding that Mr. Guo did not suffer past persecution because of his religious beliefs is not supported by substantial evidence.

### IV

██ Where an appellate court has held that an IJ's or BIA's adverse credibility finding is not supported by substantial evidence, and the BIA has *not* addressed the

merits of a petitioner's application, the proper procedure is to remand the case to the BIA for further consideration and investigation in light of the ruling that the petitioner is credible. *Ventura,* 537 U.S. at 16, 123 S.Ct. 353 (holding that "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands").

■ In this matter, the IJ found that Mr. Guo was not subjected to persecution because of his religious beliefs. We have concluded that the IJ's finding that Mr. Guo did not testify truthfully is not supported by substantial evidence. Because the IJ found that "[e]ven if [Mr. Guo] has testified [credibly]," he did not suffer past persecution, we are not required to remand under *Ventura* for a determination on that issue. *See Li v. Ashcroft,* 356 F.3d 1153, 1161 n. 7 (9th Cir.2004) (en banc) ("The IJ thus did consider whether [the petitioner] resisted a coercive population control policy. There is therefore no need to remand under *Ventura* for the agency to consider whether any persecution was on account of resistance to a coercive population control program.").

■ Since we have concluded that Mr. Guo presented substantial evidence that he was persecuted in China because of his religious beliefs, he is presumed to have a well-founded fear of future persecution on account of his religious beliefs if he is forced to return to China. *Duarte de Guinac,* 179 F.3d at 1159; *see also* 8 C.F.R. § 208.13(b)(1). "The burden then shifts to the INS to show by a preponderance of the evidence that country conditions have changed to such an extent that the petitioner no longer has a well-founded fear that he would be persecuted if he were to return." *Id.* However, since the agency did not reach the question of whether Mr. Guo has a well-founded fear of future persecution based on current conditions in China, we must remand this matter to the agency for a determination whether the Government can rebut the presumption that Mr. Guo has an objectively well-founded fear of future persecution. *Ventura,* 537 U.S. at 17, 123 S.Ct. 353; *Li,* 356 F.3d at 1161.

The petition for review is GRANTED.

We REMAND with instructions that the agency determine whether the Government can rebut the presumption that Mr. Guo has a well-founded fear of future persecution because he is a Christian.

We also REMAND for a determination by the Attorney General to exercise his discretion with respect to whether Mr. Guo's application for asylum should be granted.