**Gerezgiher MOGOS, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–71738.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 1, 2004.

Decided Dec. 9, 2004.

Madhu Sharma, Esq., The Law Offices of Steven R. Landaal, Santa Monica, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of The District Counsel Department of Homeland Security, San Francisco, CA, Hillel Smith, Anthony W. Norwood, Esq., Thomas Fatouros, DOJ—U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before REINHARDT, TASHIMA, and WARDLAW, Circuit Judges.

## MEMORANDUM *

Gerzgiher Mogos, a native and citizen of Ethiopia, petitions for review of a decision of the Board of Immigration Appeals ("BIA"), which affirmed without opinion the decision of the Immigration Judge ("IJ"). The IJ denied Mogos' application for asylum, withholding of removal, and for relief under the Convention Against Torture ("CAT") and ordered him removed to Eritrea. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we grant the petition.

Mogos was born in Eritrea, which, at the time, was part of Ethiopia. A referendum was held on Eritrean independence from Ethiopia in 1993, but Mogos, who is a Jehovah's Witness, did not vote in the referendum because his religion did not allow it. Because he refused to participate in the referendum, in August 1993, three Eritrean soldiers came to his work place and beat him. Mogos was taken to a

hospital in Asmara, where he was treated for injuries he suffered during the attack.

In November 1993, Mogos fled with his family to Ethiopia, where he remained until 1998, when a border war broke out between Eritrea and Ethiopia. When the conflict broke out, Ethiopian authorities began "capturing Eritreans [in Ethiopia] and sending them back home." [1]

In December 1998, four Ethiopian soldiers broke into Mogos' home in the middle of the night and arrested him because of his Eritrean heritage. Mogos was beaten and questioned about his ties to Eritrea for three days. He then escaped and fled to a friend's home.

Mogos went to Holland, where he was placed in a refugee camp. He applied for asylum in Holland but his application was denied. Mogos therefore bought a passport in Holland and came to the United States in 1999. Mogos sought asylum as soon as he entered the United States. He admitted to immigration and customs officials at the airport that the passport was not his and informed them that he wished to apply for asylum.

At the asylum only proceeding held before the IJ, Mogos testified that he would be killed if returned to Eritrea because he left without police permission. He also testified that he would be imprisoned or killed if returned to Ethiopia because of his Eritrean background.

The IJ denied the application, finding that Mogos' testimony was too vague to be credible. The BIA affirmed without opinion, pursuant to 8 C.F.R. § 1003.1. "Where the BIA affirms an IJ's order without opinion, we review the IJ's order as the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. A 1999 State Department report states that thousands of Ethiopians of Eritrean origin were deported and that "1,200 male Eritreans and Ethiopians of Eritrean origin are being held in internment camps."

final agency action." *Khup v. Ashcroft*, 376 F.3d 898, 902 (9th Cir.2004).

■ The IJ's adverse credibility determination was not supported by substantial evidence. *See Ge v. Ashcroft*, 367 F.3d 1121, 1124 (9th Cir.2004) (stating that we review adverse credibility determinations under the substantial evidence standard). The IJ does not "demonstrate 'a legitimate articulable basis to question the petitioner's credibility,'" nor does he "'offer a specific, cogent reason for any stated disbelief.'" *Guo v. Ashcroft*, 361 F.3d 1194, 1199 (9th Cir.2004) (quoting *Osorio v. INS*, 99 F.3d 928, 931 (9th Cir.1996)). To the contrary, the IJ noted that Mogos' story was internally consistent and consistent with his declaration attached to his asylum application. The IJ merely thought that Mogos' testimony was too broad and general, such that it was a story that Mogos easily could have memorized. This reasoning does not satisfy the requirement that the IJ's adverse credibility finding be supported by a specific, cogent reason.

Contrary to the IJ's conclusion, Mogos' testimony was very specific and detailed. He named the dates and times the soldiers arrived in both incidents and described in detail what happened to him. For example, he testified that the three Eritrean soldiers held him, knocked him against the wall, hit his head, and hit him with a rifle during the 1993 incident, and that, in the 1998 incident, the four Ethiopian soldiers kicked him, pushed his wife, who was holding a child, and knocked her down, put him in a truck, and tortured him while asking him questions such as, "who have you been seeing," "what have you been sending," and "have you been contributing money to bombard our country."

In response to cross-examination, Mogos gave further details, such as the name of the hospital where he was treated for his injuries, the distance of the hospital from his birthplace, the treatment he received for his broken leg, which door he used to leave the hospital, the cost of the taxi when he left the hospital, and the name of the friend to whose home he fled after leaving the hospital. Mogos described his journey to Addis Ababa, stating that he stopped for a week on his way there, "in a place called Maksala," because he was not feeling well. Mogos also described the place where he was taken and tortured during his December 1998 detention, stating that it was "like a wooden house and they had tin as a roof and in the back of it there is a river, so I jumped and the roof was old and I tore it and I escaped." Mogos also testified that the prison was "a place called Kachele," that there were over 400 people being held there, and that other people lifted him up so he could reach the tin roof when he escaped. The IJ's finding that Mogos' testimony was vague and general, accordingly, is not supported by substantial evidence.

The IJ faulted Mogos for failing to provide evidence corroborating his claim, but he does not explain what evidence Mogos should have provided. "[W]here ... the [IJ] offers no legitimate reason to question the applicant's credibility, we must reverse a finding that the applicant failed to meet his burden of proof because he did not provide corroborating evidence." *Salaam v. INS*, 229 F.3d 1234, 1239 (9th Cir.2000); *see also Ge*, 367 F.3d at 1127 (stating that no corroborating evidence was required because the petitioner "provided credible and consistent testimony"). In addition to the fact that it is unclear what evidence the IJ expected Mogos to provide, there is no indication that any evidence of Mogos' nationality or of his family's presence in a refugee camp was easily available to Mogos. *See Guo*, 361 F.3d at 1201 (concluding that evidence the IJ wanted to see was

not easily available to the applicant "because it was in China").

The IJ also relied for the adverse credibility determination on his observation that Mogos was "unable to establish very much information or background of a Jehovah's Witness particularly in light of being able to mention only that he knows that they're not supposed to give blood or swear an oath." Neither the IJ nor the INS, however, ever asked Mogos an open-ended question about the tenets of his faith. Instead, he was questioned only about specific aspects of his faith. Mogos should not be faulted for failing to describe any other aspects of his faith, especially in light of the IJ's admonishment to "only answer the question which is asked."

██ Even deeming Mogos credible, the IJ went on to state that Mogos had not established either past persecution or a well-founded fear of future persecution. The IJ's discussion of whether Mogos had met his burden of establishing eligibility for asylum, however, again focused solely on Mogos' credibility and his failure to provide corroborating evidence. The conclusion that Mogos failed to meet his burden of establishing either past persecution or a well-founded fear of future persecution, accordingly, is not supported by substantial evidence.

We find that Mogos' testimony is credible and that the record compels the conclusion that he has established past persecution on account of a statutorily protected ground. He "therefore is presumed to have a well-founded fear of future persecution." *Lopez v. Ashcroft,* 366 F.3d 799, 804 (9th Cir.2004). The presumption of a well-founded fear of future persecution may be rebutted, however, if the record supports a finding of changed country conditions by a preponderance of the evidence. *Id.* at 804–05.

When the government does not introduce evidence, or raise any arguments, in an effort to rebut the presumption, we may find the alien eligible for asylum, and a remand to the BIA under *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), is unnecessary. *See Baballah v. Ashcroft,* 367 F.3d 1067, 1078 & n. 11 (9th Cir.2004). Here, the IJ's decision reflects that the country report not only fails to rebut the presumption, but supports it. Indeed, the IJ made it clear that if he had found Mogos' testimony regarding his Eritrean origins credible, the report would have buttressed Mogos' account of the ongoing persecution and corroborated his claims of past persecution and well-founded fear of future persecution.

Accordingly, we find that Mogos is statutorily eligible for asylum and remand this case to the BIA for the exercise of discretion whether to grant Mogos asylum.

PETITION FOR REVIEW GRANT-ED.[2]

---

**2.** We do not reach the issues Mogos raises regarding the Visa Waiver Pilot Program and whether the IJ erred in ordering him removed to Eritrea rather than Ethiopia because Mogos failed to raise them below. *See Barron v. Ashcroft,* 358 F.3d 674, 677–78 (9th Cir.2004) (discussing the "well-known axiom of administrative law" that a petitioner must raise an issue in the proper administrative forum in order to preserve it for appeal).