423 F.3d 997
 Lin QUAN, Petitioner,
v.
Alberto R. GONZALES, Respondent.
 No. 03-70630.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 6, 2005* Pasadena, California.
 Filed September 7, 2005.
 
 Douglas G. Ingraham, Alhambra, California, for the petitioner.
 Peter D. Keisler, Assistant Attorney General; John C. Cunningham, Senior Litigation Counsel; Norah Ascoli Schwarz, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for the respondent.
 On Petition for Review of an Order the Board of Immigration Appeals.
 Before: DIARMUID F. O'SCANNLAIN and KIM McLANE WARDLAW, Circuit Judges, and ROBERT H. WHALEY,** United States District Judge.
 Opinion by Judge Whaley; Dissent by Judge O'Scannlain
 Whaley, District Judge:
 Petitioner, Lin Quan, and her husband, Linsheng Li,[1] natives and citizens of China, petition for review of the Board of Immigration Appeals' ("BIA") decision affirming an immigration judge's denial of her application for asylum. We have jurisdiction under 8 U.S.C. § 1252. We review for substantial evidence. Abebe v. Ashcroft, 379 F.3d 755, 758 (9th Cir.2004). We grant the petition for review, vacate and remand.
 * Petitioner Quan's opening brief includes a request for independent relief for Lisheng Li. The brief contends that the appeals of Quan and her husband, Lisheng Li, have been consolidated. Under Fed. R.App. P. 3(b)(2), "[w]hen the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals." No such consolidation has occurred. Instead, the petition of Lisheng Li v. Ashcroft, Case No. 03-70631, was dismissed on November 26, 2003, for failure to file an opening brief pursuant to Ninth Circuit Rule 42-1. No motion was filed to reopen the appeal.[2] Accordingly, the cases of Lin Quan and Lisheng Li have not been consolidated for appeal, and only the petition of Lin Quan is properly before this court.
 II
 The Respondent argues that the Court should refuse to consider the Petitioner's opening brief because it fails to cite to the 896-page administrative record, in violation of Fed. R.App. P. 28(a)(9)(A), which provides that the appellant's brief must include "citations to the authorities and parts of the record on which the appellant relies."
 We are sympathetic to the Respondent's argument. "[W]hen an appellant has approached our rules with such insouciance that we cannot overlook its heedlessness, we have not hesitated to strike an appellant's briefs and dismiss the appeal." Dela Rosa v. Scottsdale Mem'l Health Sys., Inc., 136 F.3d 1241, 1243 n. 1 (9th Cir. 1998) (citations and quotations omitted); see also Mitchel v. General Elec. Co., 689 F.2d 877, 878 (9th Cir.1982) (dismissing case where appellant failed to cite to excerpts of record).
 Because we have conducted our own independent review of the administrative record, we do not find it necessary to impose sanctions in this case. We do, however, admonish counsel of record that "attorneys should accept the responsibility of presenting an appeal of professional quality, which necessarily includes full compliance with the rules of court for the Ninth Circuit." Dela Rosa, 136 F.3d at 1244.
 III
 The IJ issued an adverse credibility finding, citing numerous bases, falling into roughly five categories: (1) the date Quan began practicing Christianity; (2) the date Quan told her husband she was practicing Christianity; (3) where Mr. Li resided during his father's illness; (4) Quan's arrest; and (5) her release on bond. The IJ's adverse credibility finding must be supported by "a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." Guo v. Ashcroft, 361 F.3d 1194, 1199 (9th Cir. 2004) (citations and quotations omitted).
 First, the IJ found that Quan's testimony about first "joining Christianity" in 1996 was not credible, because her husband testified that he told Quan about his Christian beliefs at the time of their marriage.[3] Because Mr. Li never testified that his wife began practicing Christianity prior to 1996 (at most, he stated she believed in Jesus Christ at an earlier date), there was no true inconsistency. While the testimony may have been unclear, "unclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony." Guo, 361 F.3d at 1200 (citing He v. Ashcroft, 328 F.3d 593, 602 (9th Cir.2003)).
 Second, the IJ noted a discrepancy between Quan's account that she informed her husband of her home church participation in early or late July 1996, and Mr. Li's testimony that he remembered learning of her participation at his father's funeral on August 25, 1996. Mr. Li stated that he did not notice his wife's participation at an earlier date because he was busy with work and was often away from home.[4] Even assuming that the IJ was correct in finding that there was a discrepancy regarding the timing of her participation in the home church, the discrepancy was only of one to one-and-a-half months. "[M]inor discrepancies in dates that . . . cannot be viewed as attempts by the applicant to enhance h[er] claims of persecution have no bearing on credibility." Damaize-Job v. INS, 787 F.2d 1332, 1337 (9th Cir.1986); see also Martinez-Sanchez v. INS, 794 F.2d 1396, 1400 (9th Cir.1986) (reversing adverse credibility determination based on "trivial errors" about date the petitioner joined a paramilitary group).
 Third, the IJ found that Quan's testimony was not credible because she testified that her husband was living at "her father-in-law's home" while Mr. Li testified that he was staying "at his brother's share at the hospital." The record, however, is devoid of any reference to Mr. Li staying "at his brother's share at the hospital," as noted by the IJ. Even if an inconsistency were deemed to exist, it did not go to the heart of the asylum claim. See, e.g., Kebede v. Ashcroft, 366 F.3d 808, 811 (9th Cir.2004) (finding testimony regarding the petitioner's brother's place of residence was minor and based on witnesses' difficulties with English). There is no dispute that Mr. Li was not residing at his home during his father's illness, and this is the only issue marginally relevant to Quan's claim.
 Fourth, the IJ found that Quan's testimony that her home was raided and she was arrested after participating in so few meetings was not plausible. The IJ explained that
 [i]n a country the size of China, for a person to be so unlucky to have just joined a small group of seven or eight according to her testimony, conduct four secret meetings in homes not always her home, and, then be arrested is highly improbable and at a minimum implausible. Furthermore, the fact that she explained that the local committee was with the arresting officials does not diminish this implausibility.
 We find that this conclusion was not supported by the record. Quan testified that she attended ten meetings, not four, and that of these meetings, five were held at her home. Moreover, the IJ's finding that due to the "size of China" Quan would not be found and arrested after five months of participation in a home church is speculation. An inference of a country's police capabilities cannot be drawn merely from its geographical size. See Guo, 361 F.3d at, 1199 ("Conjecture and speculation car, never replace substantial evidence as the basis for an adverse credibility finding.") (citations omitted). Further, the IJ's disregard of the presence of a member of the Neighborhood, Committee, Ms. Jian, at Quan's arrest was not supported by coherent reasons. Quan's testimony that she personally knew Ms. Jian, that Ms. Jian was affiliated with the Chinese government, and that Ms. Jian knew where she lived, directly impacted the plausibility of her arrest. The IJ, however, did not provide a coherent reason for disregarding these facts. See id.
 Finally, the IJ focused on Quan's account of where her mother obtained the 3,000 RMB needed for her bail on October 27, 1996. Quan testified that her mother made the withdrawal from her savings bank on Sunday, October 27, 1996. The IJ found it implausible that banks in China would be open seven days a week. There is no evidence in the record that Quan's mother's savings bank was not open on Sunday. For the IJ to come to this conclusion, he had to assume facts not in evidence. See id.[5]
 For the above reasons, we find that, the IJ's adverse credibility finding was not supported by substantial evidence. Because we find that the IJ's adverse credibility finding is not supported by substantial evidence, we accept Quan's testimony as true for the purposes of the remaining analysis. See Wang v. Ashcroft, 341 F.3d 1015, 1023 (9th Cir.2003).
 IV
 The IJ found that Petitioner Quan failed to demonstrate that she was persecuted by Chinese authorities. To demonstrate eligibility for asylum, an applicant must establish "either past persecution or a well-founded fear of present persecution on account of [a protected ground]." Mejia-Paiz v. INS, 111 F.3d 720, 723 (9th Cir.1997) (internal quotation marks omitted); 8 U.S.C. § 1101(a)(42)(A). We review the IJ's determination for substantial evidence. See INS v. Elias-Zacarias, 502 U.S. 478, 481-84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).
 The IJ's factual findings overlook or significantly understate the treatment Quan endured. The IJ stated that the Chinese authorities "Pulled [Quan's] hair" while she was in detention; however, Quan testified that her interrogator "pulled [her] head and kept shaking [her] head and push [her] head." Quan described her treatment as a "beat[ing]."
 The IJ also found that Quan's electrocution with a rod was not sufficient to present a case of persecution, because she did not report any resulting "medical attention or sustained injury." Using an electrically-charged baton on a prisoner, however, may constitute persecution, even when there are no long-term effects and the prisoner does not seek medical attention. See Guo, 361 F.3d at 1198 (officer used electrically-charged baton to subdue petitioner and held his arms and kicked his legs causing him to fall); see Mihalev v. Ashcroft, 388 F.3d 722, 730 (9th Cir.2004) (reviewing the findings of Guo and noted that "[t]here is no suggestion in Guo that the petitioner was significantly injured as a result of being hit in the face seven or eight times and beaten with a plastic pole"). Moreover, the record demonstrated that Quan did suffer sustained injury from the electric shock. She testified that as a result of her treatment, she experienced a severe headache, was very dizzy, had blurry vision, was perspiring, and was barely conscious. She testified that upon returning home, she was paralyzed with fear, and suffered a severe headache and weakness.
 The IJ's opinion also omits discussion of Quan's testimony that she was fired from her job as a result of her religious association. See Popova v. INS, 273 F.3d 1251, 1258 (9th Cir.2001) (finding that applicant was persecuted on account of religion where she was "threatened by police officers at [her place of employment], who said she would be fired if she aid not change her [Christian] name").
 Based on a full review of the record, we find that a reasonable fact finder would be compelled to conclude that Quan has shown sufficient evidence of past persecution. We do not address Quan's entitlement to withholding of removal or relief under the Convention Against Torture because Quan did not raise these issues in her brief to this court. See Martinez-Serrano v. INS, 94 F.3d 1256, 1259 (9th Cir.1996) (holding that issues not raised in the appeal brief are deemed abandoned).
 We grant the petition for review, vacate and remand so that the Attorney General may exercise his discretion as to whether to grant asylum relief. See Sael v. Ashcroft, 386 F.3d 922, 930 (9th Cir.2004).
 PETITION FOR REVIEW GRANTED; VACATED AND REMANDED.
 
 
 
 Notes:
 
 
 *
 This panel unanimously finds this case suitable for decision without oral argumentSee Fed. R.App. P. 34(a)(2).
 
 
 **
 The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 [1]
 The record is unclear as to whether Quan's husband's name is phonetically spelled Linsheng "Li" or Linsheng "Lin." We use "Li" because that is the spelling employed on Quan's asylum application
 
 
 [2]
 The Petitioner refers to a "Motion for Relief from Dismissal for Failure to Prosecute and to Consolidate Petitions," but no such motion was ever filedPetitioner's Op. Brief at 2.
 
 
 [3]
 We do not address the claim in the Respondent's brief that the Petitioner's father was imprisoned for 24 years for being Christian. This contention is unsupported by the record, and was not relied on by the IJ in making his credibility determination
 
 
 [4]
 The IJ's opinion does not weigh the significant fact that Quan's husband was in America from mid-April 1996 through June 1996, or the fact that from June 1996 through August 25, 1996, he did not live at home. The IJ's opinion merely states that "the fact that the respondent's husband was going back and forth to the United States during this time frame, does not diminish this implausible conduct." This conclusory statement does nothing to address the evidence
 
 
 [5]
 Moreover, publicly available information indicates that some branches of the Bank of China are open from 3 p.m. to 6 p.m. on SundaysSee TravelChinaGuide.com, at http://www.travelchinaguide.com/essential/tibet/money.htm.
 
 
 
 1
 O'SCANNLAIN, Circuit Judge, dissenting.
 
 
 2
 I respectfully submit that the court has substituted its independent analysis of the record for that of the Immigration Judge (the "IJ"), and, in so doing, has exceeded its authority and intruded upon the proper role of the fact finder. Because I conclude that the IJ's findings deserve greater deference than the majority accords them, I respectfully dissent from the decision to grant Lin Quan's petition.
 
 
 3
 * Where the BIA has summarily affirmed the decision of an IJ, we review the IJ's decision as though it were the opinion of the BIA, see Falcon Carriche v. Ashcroft, 350 F.3d 845, 849 (9th Cir.2003), and we must accept the IJ's finding of fact unless the evidence compels a contrary conclusion. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). This is an extremely deferential standard of review: it is not enough that the evidence supports a contrary conclusion, that the panel would have weighed the evidence differently, id., or even that the panel is persuaded that the finding is incorrect; the evidence must be so overwhelming that not just the panel in question but "any reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphases added). The law and the Supreme Court are unequivocal on this point. See id.; Elias-Zacarias, 502 U.S. at 481 n. 1, 112 S.Ct 812 ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it.").
 
 
 4
 * The majority discusses some of the implausibilities and inconsistencies on which the IJ based his adverse credibility finding and purports to show how the implausibilities are conjectural and how the inconsistencies can be explained. On some points the majority is persuasive, but, given the extremely deferential standard of review that we must apply, enough evidence remains, in my view, to support the IJ's finding.
 
 
 5
 In particular, Quan's account of how her mother was able to obtain 3,000 RMB to procure her release from detention is accepted at face value by the majority despite contrary evidence in the record. Quan testified that her mother was able to withdraw the money from her savings bank on a Sunday, but Quan's husband repeatedly testified that such banks are closed on Sundays, It is not accurate, therefore, to say that "[i]n order for the IJ to come to [his] conclusion, he had to assume facts not in evidence," maj. op. The IJ explicitly found that the contradictory testimony of the husband — who had every reason to corroborate his wife's story and no reason to undermine it — cast substantial doubt on Quan's credibility. This sort of weighing of evidence is emphatically the prerogative of an IJ and the fact that the apparent inconsistency affects a key aspect of Quan's allegation of persecution should make it an unassailable basis for an adverse credibility finding.
 
 
 6
 Quan's testimony was also confused and incomplete with respect to the number and dates of the prayer meetings that she attended, and the timing of her confession of her belief in Jesus Christ to her husband. The majority attempts to down-play the significance of the latter point by labeling it as a minor discrepancy in dates. As the majority characterizes it, the one month difference between ,he date when Quan claims to have told her husband about her Christian practice and the date that her husband claims to have learned of it is of no import, but the IJ had good reason to view it otherwise. What concerned the IJ was the fact that, although Quan attributed her mother's recovery from illness to her new practice of Christianity, she appears to have withheld this information from her husband — who was sympathetic to Christianity — throughout the course of his own father's illness. The time between July and August, 1996, therefore, was not insignificant. That month marks an important change in circumstances: it is the difference between Quan informing her husband of her newfound faith in the healing power of Christian prayer while her husband's father was still alive and telling him at his father's funeral. In the case of a meaningful inconsistency such as this, it is the IJ's duty to consider the first-person testimony before him and to resolve the evidentiary confusion either for or against the petitioner. This the IJ did, and, because his conclusion is reasonably supported by evidence in the record — namely, the testimony of Quan's husband — we are not entitled to disturb it.
 
 
 7
 The majority's justifications of its own interpretations of this and other inconsistencies are reasonable, but so too is the IJ's scepticism, which should not be supplanted unless it is wholly conjectural or has no basis in the record. Because there Is genuine confusion and inconsistency in the record on these points, and because the IJ's conclusions are supported by evidence in the record, it simply cannot be said that the evidence compels reversal. I would, therefore, affirm the IJ's adverse credibility finding and deny the petition.
 
 II
 
 8
 The IJ also found that a single detention, for less than one day, during which Quan had her hair pulled, was shaken, and was poked once with an electric prod in her shoulder/neck area did not rise to the level of persecution.
 
 
 9
 Given the inconsistent thresholds for finding persecution applied by different panels of this court, it is not surprising that the majority is able to cite a case in which we held that similar facts amounted to persecution. See Guo v. Ashcroft, 361 F.3d 1194 (9th Cir.). In that case, however, the petitioner was detained for a day and half (more than 50% longer than in this case), was struck twice in the face, kicked in the stomach, and ordered to do push-ups until he collapsed. By contrast, in other cases we have held that a single detention, during which the petitioner was beaten, did not compel a finding of persecution because the petitioner did not require medical attention. See, e.g., Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995).
 
 
 10
 The majority argues that the lingering physical and mental symptoms about which Quan testified and the fact that she lost her job because the police visited her workplace support a finding of persecution. That may be so, but the fact that Quan did not testify that she required medical treatment, which was an important factor in our holding in Prasad, that she claims to have heard, second-hand, that she had lost her job but never bothered to confirm the report, and that, although her husband worked at the same company, nobody ever told him that she had been fired. On the basis of this evidence it was reasonable for the IJ to find that Quan had not been persecuted.
 
 
 11
 Because I do not believe that an IJ' s decision should be overturned merely because the reviewing panel disagrees with it or can point to a plausibly analogous case from our abundant and inconsistent precedent, and because the evidence in this case does not compel a finding of persecution, I would affirm the IJ's decision and deny the petition.
 
 III
 
 12
 Finally, Quan and her counsel, Mr. Douglas Ingraham, are fortunate that this petition was not dismissed for failure to abide by Fed. R.App. P. 28(a)(9)(A), which requires a brief to contain "citations to the. . . part of the record on which the appellant relies." See also Ninth Circuit Rule No. 28-2.8. Given the limited resources of both the government and this court, it was irresponsible of Quan's counsel to shift the burden of sifting through almost 900 pages of administrative record onto the government and this court to find the facts on which Quan bases her argument. In Dela Rosa v. Scottsdale Memorial Health Systems, Inc., 136 F.3d 1241, 1243 (9th Cir. 1998), we "declare[d] that this habit of noncompliance must end" and we have, on at least two occasions, struck briefs and dismissed appeals for failure to comply with this basic requirement. See Mitchel v. General Electric Company, 689 F.2d 877, 878 (9th Cir.1982); N/S Corporation v. Liberty Mutual Insurance Company, 127 F.3d 1145, 1146 (9th Cir.1997).
 
 
 13
 The majority concedes the technical deficiencies of the brief and admits that it is "sympathetic to the Respondent's argument [that the brief be struck and the case dismissed]," maj. op., but concludes that dismissal is not necessary "[b]ecause we have conducted our own independent review of the administrative record." Id. With all due respect to the majority's commendable diligence, that is beside the point. Opposing counsel, or, as in this case, the court, will often be able to compensate for a party's shortcomings, but doing so involves a waste of limited time and resources. The rules governing the form and content of appellate briefs are not merely hortatory; they must be obeyed, and, when they are not, the consequences should be real. Mr. Ingraham should consider himself exceedingly fortunate that the only consequence of his inadequate performance in this case is a verbal admonishment. He should not expect to escape so lightly in the future.