**Mustafe Maxamud DOLE, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

**No. 04–75293.**

United States Court of Appeals, Ninth Circuit.

Submitted June 6, 2008.\*

Filed Oct. 10, 2008.

Sergei Shevchenko, Barshev, P.C., Beverly Hills, CA, for Petitioner.

CAC–District Counsel, Esquire, Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Karl N. Gellert, Esquire, U.S. Department of Justice, Mark L. Gross, Esquire, DOJ–U.S. Department of Justice, Civil Rights Division/Appellate Section, Oil, DOJ–U.S. Department of Justice, Civil Division/Office of Immigration Litigation, Washington, DC, for Respondent.

Before: KOZINSKI, Chief Judge, BEA, Circuit Judge and HUFF,\*\* District Judge.

### MEMORANDUM\*\*\*

The BIA affirmed the IJ's adverse credibility finding, and the record supports this

---

\*\* The Honorable Marilyn L. Huff, United States District Judge for the Southern District of California, sitting by designation.

\*\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

finding, as petitioner's testimony was inconsistent with his asylum application. *See Li v. Ashcroft,* 378 F.3d 959, 962 (9th Cir.2004). Under questioning, petitioner changed his testimony about his clan, his bakery business, and his time in a refugee camp. His knowledge about the Madhipan clan and Somalia's political state was vague and very limited. Indeed, his witnesses appeared to know more about the clan than he did, even though both witnesses were citizens of Ethiopia—not Somalia. And the IJ found that petitioner's knowledge of Somalia's political state and culture could easily have come from the State Department's country report on Somalia.

Even a single inconsistency in petitioner's testimony can support an adverse credibility finding. *See Chebchoub v. INS,* 257 F.3d 1038, 1043 (9th Cir.2001). Given the inconsistencies in petitioner's testimony, a reasonable adjudicator would not be compelled to find him credible, and substantial evidence thus supports the finding that petitioner isn't eligible for asylum, so his asylum claim fails. *See* 8 U.S.C. § 1252(b)(4)(B); *Li,* 378 F.3d at 962. He is thus necessarily ineligible for withholding of removal. *See Farah v. Ashcroft,* 348 F.3d 1153, 1156 (9th Cir.2003). Petitioner's claim for relief under the Convention Against Torture also fails, because a reasonable adjudicator would not be compelled to find that it's more likely than not that he would be tortured if removed. *See* 8 C.F.R. § 1208.16(c)(2).

Because petitioner didn't testify credibly, he can prevail only by offering reliable, corroborative evidence. *See Ladha v. INS,* 215 F.3d 889, 899 (9th Cir.2000). But petitioner's evidence consisted only of: (1) two documents purporting to show Somali citizenship that could not be authenticated—a birth certificate without a birth date and an ID card that wasn't translated; (2) testimony about petitioner's brothers being killed in 1991 from two witnesses who gave virtually identical testimony, and who admitted that they had no personal knowledge of the alleged killings having themselves left Somalia in 1983; and (3) an affidavit from petitioner's cousin in Atlanta that wasn't executed. So a reasonable fact finder wouldn't be compelled to accept petitioner's proffered evidence of Somali citizenship, but even if petitioner could somehow show that the evidence compelled a finding that he is a Somali citizen, his claims would still fail because a reasonable fact finder would not be compelled to accept his evidence that he suffered persecution.

**PETITION DENIED.**

BEA, Circuit Judge, dissenting:

The majority fails to recognize substantial evidence in this case does not support, as it must, the Board of Immigration Appeals's adverse credibility finding.[1] Thus, I must respectfully dissent.

The Immigration Judge found, and the majority agrees, that Dole was not credible because he was unable to establish he was a Somali national and he had been in the Kenyan refugee camps. I disagree with the majority's conclusion because the IJ's factual findings are clearly erroneous.[2]

---

1. Given that the BIA affirmed the IJ's adverse credibility finding, we review the IJ's stated reasons for finding Dole not credible.

2. The IJ exhibited clear animosity toward Dole's first attorney, severely limiting the amount of time Dole had to testify, and refusing to hear testimony from Dole's out of town witnesses who had made the journey from out of town several times. The record does not indicate any conduct on the part of Dole or his counsel to justify such animosity. Dole finally had to hire a new attorney, who handled his fourth and fifth hearings. Each con-

The IJ's first reason for finding Dole not credible is that Dole submitted few documents to prove his Somali nationality, and the ones he did submit the government was unable to authenticate. Dole submitted a Somali birth certificate and Somali identification card to prove he was from Somalia—but there is no way to authenticate documents from Somalia, given that Somalia has no central government and has not had one for years![3]

In *Wang v. INS*, 352 F.3d 1250, 1254 (9th Cir.2003), we held that "[m]ere failure to authenticate documents, at least in the absence of evidence undermining their reliability, does not constitute a sufficient foundation for an adverse credibility finding." We denied a Chinese petitioner's asylum claims, but in evaluating each of the IJ's stated reasons for finding the petitioner not credible, we found "[t]o the extent that the IJ based her adverse credibility finding upon Wang's failure to supply affirmative authentication for the documents, her finding does not meet our substantial evidence standard." *Id.* at 1253–54.

Here as in *Wang*, the government has no way of assessing whether the birth certificate Dole presented is authentic or not. Therefore, the IJ should not have relied on it to find Dole not credible. Further, even though Dole's birth certificate lists only the year of his birth, it was consistent with his testimony on both the date and location of his birth. Therefore, it is probative of his nationality. Given Dole's testimony that the militia had just slaughtered his brothers and captured his father, it makes sense that Dole (at the age of 16) would not have thought to stop to gather even more documentation to prove his nationality before leaving. In sum, the failure in this case to supply affirmative authentication for documents does not support an adverse credibility finding.

Second, the IJ found Dole's testimony about his clan was vague. A lack of specificity can make an applicant's testimony suspicious. *See Singh–Kaur v. INS*, 183 F.3d 1147, 1153 (9th Cir.1999). Nevertheless, "[g]eneralized statements that do not identify specific examples of evasiveness or contradiction in the petitioner's testimony are insufficient [to uphold an adverse credibility finding]." *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998).

Dole answered all the questions he was asked about his clan, and he was given only a very short time to testify. *See* footnote 2, *supra*. The IJ irrationally compared Dole's knowledge about his clan with the knowledge displayed by his witnesses, where the witnesses were asked more specific questions than Dole. The fact that Dole did not volunteer more specific evidence regarding his clan, when neither the attorneys nor the IJ asked him specific questions about it, cannot support

tinuation of the hearing had nothing to do with Dole.

**3.** The most recent report by the U.S. State Department states:

There is no competent civil authority in Somalia. The Government of Somalia ceased to exist in December of 1990. Since that time the country has undergone a destructive and brutal civil war, in the course of which most records were destroyed. Those few records not destroyed are in the hands of private individuals or are other-wise not retrievable. There are no police records, birth certificates, school records, etc., available from Somalia. There are no circumstances under which immigrant visa applicants can reasonably be expected to recover original documents held by the former Government of Somalia.

Vol. 9, Foreign Affairs Manual, Part IV, Appendix C, "Somalia," *available at* http://travel.state.gov/visa/reciprocity/CountryFolder/S/Somalia.htm.

an adverse credibility finding. *See Akinmade v. INS*, 196 F.3d 951, 957 (9th Cir. 1999) (granting a petition for review and reversing an IJ's adverse credibility finding because the petitioner's testimony was sufficiently detailed "especially when Akinmade was not given notice that he should provide such information, nor asked at the hearing to do so"). Dole was never given an opportunity to explain this perceived lack of specificity in his testimony, nor told he should elaborate on his answers.

Another reason the IJ gave for disbelieving Dole was that he did not give sufficient details about the kidnaping of his father and he did not express concern over the whereabouts of his father, who remained missing. Reading the transcript, it is obvious that his attorney was trying to rush him through his testimony because the IJ wanted to break after only a couple of hours that day. Dole's attorney did a poor job of asking Dole for any details about the incident, but when Dole began to explain in more detail about his father, the IJ herself cut him off and directed the questioning to a new subject.

Third, the IJ erroneously found that Dole's testimony about his livelihood in Kenya was inconsistent. The IJ stated Dole first testified his wife worked out of their home, then later testified they owned a bakery store. Actually, Dole consistently testified that he baked goods in their home for sale, and then his wife took the goods to schools and businesses to sell them. There was no testimony by anyone about a store. Dole was never given an opportunity to explain this "contradiction," which did not in fact exist. A petitioner must be afforded an opportunity to explain any inconsistencies that form the basis of an adverse credibility finding. *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999).

Next, the IJ found Dole not credible based on several documents that did not contradict Dole's testimony. For example, the IJ relied on the fact that the two receipts Dole submitted for transactions in Kenya proved not his nationality, but only that someone in Kenya had purchased products at one time, and that Dole produced an untranslated booklet containing his picture and several untranslated letters from his wife in Kenya. None of these documents contradict Dole's testimony or are a valid reason to find him not credible.

In addition, the BIA's finding that "the affidavits of identity (one of which is not executed) cannot be given significant weight without the testimony of the affiants" is clearly erroneous. The BIA is simply wrong in concluding one of the affidavits is not signed. All the affidavits were signed and notarized, and there are three affidavits, not two as the IJ found.

The IJ also erred in discounting testimony from one of the witnesses because that witness was not in court. The witness had already appeared on a number of occasions, ready to testify, only to have the IJ decide to continue the hearing to another date for various reasons having nothing to do with Dole. *See* footnote 2, *supra.*

Dole was finally allowed to call his supporting witnesses at the fifth hearing on the merits, but one of them could not appear in person due to work in another state. Nevertheless, Dole presented an affidavit from that witness, and the witness testified and was cross-examined by telephone. Because Dole had made this witness available *four separate times* in person, the fact that this witness had to appear by telephone is not a valid basis for discounting his testimony. The government attorney had no objection to him appearing by telephone, and the government was given an opportunity to cross-examine the witness. The IJ herself

sounded grateful to the witness for being willing to appear by telephone, and acknowledged that this witness had personally appeared in court several times.

Dole's two witnesses were Ethiopian nationals who knew him for only a few years in Somalia when he was a small boy. The IJ was correct that these two witnesses gave strikingly similar testimony, giving rise to an inference that Dole's attorney coached the witnesses in how to testify. But it is also true that their testimony was not contradicted. They might simply have been telling the truth. The two witnesses were both from Ethiopia, and had traveled to Somalia to escape war in Ethiopia. They were both friends of Dole's older brothers and his cousin now living in Atlanta, and were both 42 years of age at the time of the hearing. They both remembered Dole as a small child. They both lived in Somalia for five years and then came to the United States.

Even if these similarities did seem suspicious, all that would do is give rise to an inference is that the *witnesses* are not credible. Dole was never given an opportunity to address this reason for finding *him* not credible.[4] Instead, the IJ simply presumed the witnesses were not telling the truth, and then found Dole not credible based on their testimony, even though neither witness testified to anything that contradicted Dole's testimony. Because Dole was never given an opportunity to explain why the testimony of these two witnesses was so similar, it cannot be used as a basis for finding him not credible. *See Chen v. Ashcroft,* 362 F.3d 611, 618 (9th Cir.2004); *Guo v. Ashcroft,* 361 F.3d 1194, 1200 (9th Cir.2004).

Further, if the IJ disbelieved these two witnesses, then the remedy would be to strike their testimony and not to consider it. But how another witness testified has no bearing on whether Dole himself was a credible witness. And again, the record does not show that Dole's testimony was ever contradicted.

Because there is no substantial evidence to support the BIA's adverse credibility determination, this court must take Dole's testimony as true. "Because of the IJ's reliance on contradictions with no factual basis in the record, and in light of the many inconsistencies she unfairly imputes to" Dole, I would grant the petition. *See Smolniakova v. Gonzales,* 422 F.3d 1037, 1048 (9th Cir.2005) (internal quotation marks and citations omitted).

Finally, the BIA also held that, in the alternative, "[g]iven the chaotic situation in Somalia at the time, and the lack of evidence of a central government's inability and unwillingness to control the dominant clans, the respondent cannot meet his burden to show that the harm he suffered was inflicted by a group that the government was unwilling or unable to control." This conclusion by the BIA is directly contrary to the precedent of both this court and previous rulings by the BIA itself. *See Ali v. Ashcroft,* 394 F.3d 780, 785 (9th Cir. 2005) ("Persecution need not be directly at the hands of the government; private individuals that the government is unable or unwilling to control can persecute someone."); *Mohammed v. Gonzales,* 400 F.3d 785, 798 (9th Cir.2005) (granting a petition for review where there was no central government in Somalia to enforce the prior government's ban on the widespread practice of female genital mutilation); *In re H-,* 21 I. & N. Dec. 337, 344 (BIA 1996) ("Persecution may likewise occur in the rare instance illustrated by Somalia, where

4. It could well be that the witnesses were in fact, as they testified, the same age, and thus knew each other and Dole's brothers at school.

there is no national government in existence.").

For these reasons, I respectfully dissent.