# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LI BIN LIN,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

No. 05-74130

Agency No.
A76-868-356

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 16, 2006—Honolulu, Hawaii

Filed January 9, 2007

Before: Stephen S. Trott, Kim McLane Wardlaw, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Trott

## COUNSEL

Jisheng Li, Honolulu, Hawaii, for the petitioner.

Louis A. Bracco, Assistant United States Attorney, Honolulu, Hawaii, for the respondent.

## OPINION

TROTT, Circuit Judge:

Li Bin Lin ("Lin"), a citizen of the People's Republic of China, seeks judicial review of a Board of Immigration Appeals' ("BIA") denial of his application for asylum, an application based upon his alleged persecution for resisting a coercive population control program. The BIA affirmed the Immigration Judge's ("IJ") decision and concluded that Lin was not eligible for asylum because he did not demonstrate, as required by the statute, "other resistance" to a coercive population control program. We disagree. Lin was beaten and threatened with arrest for attempting to prevent birth control officials from confiscating and destroying family property. We hold that Lin's actions satisfy the "other resistance" category set forth in 8 U.S.C. § 1101(a)(42)(B). Thus, we reverse the BIA's decision, and remand to the BIA to determine whether, in light of this opinion, Lin suffered past persecution or has a well-founded fear of future persecution in connection with his resistance.

## I

## BACKGROUND

Lin lived in the Fujian province of China, in the same house as his parents, sister, two brothers, sister-in-law, and two nieces. Because Lin's brother already had two daughters

and his wife was pregnant with their third child, birth control officials notified Lin's brother that he was required to be sterilized. Lin's brother, unwilling to be sterilized, "ran away" several days before the scheduled vasectomy procedure. In response, birth control officials went to Lin's house in March 1998 to seize and destroy household furnishings. When Lin attempted to stop the birth control officials from taking family property, they beat him up and called security to arrest him. In his declaration, Lin asserted: "I detest [the birth control officials'] action and tried to stop them, but they beat me up. I had no other alternative and I couldn't stand [it] any more, so I resisted them." After the incident, Lin immediately went into hiding to avoid arrest. In May 1998, Lin fled to Guam.

On July 17, 2001, Lin received a Notice to Appear charging him with removal pursuant to § 212(a)(6)(A)(I) of the Immigration and Nationality Act. 8 U.S.C. § 1182(a)(6)(A)(I). Lin conceded removability, but requested relief in the form of asylum and withholding of removal. Lin claimed he would be persecuted for resisting officials and fleeing arrest if he returned to China. To support this claim, Lin filed several supplemental documents with the IJ, including a summons from the Public Security Bureau in China ordering him to report to the Tan Tou Border Defense Office on April 2, 1998, a certificate verifying that his brother underwent the sterilization procedure on March 18, 1998, and a declaration from his father corroborating Lin's claims.

The IJ denied Lin's application for asylum and withholding of removal, finding Lin's testimony not credible and lacking corroboration. The BIA reversed the IJ's negative credibility finding, but dismissed Lin's appeal for failure to submit corroborating evidence in support of his claim. Lin subsequently filed a motion to reopen. On March 23, 2004, the BIA denied Lin's motion. However, in September 2004, we remanded the case to the BIA to reconsider its decision in light of Ninth Circuit precedent that eliminated the corroboration requirement when an alien's testimony is found credible. *See, e.g., Ladha*

*v. INS*, 215 F.3d 889, 900 (9th Cir. 2000) ("[W]hen an alien credibly testifies to certain facts, those facts are deemed true, and the question remaining to be answered becomes whether these facts, and their reasonable inferences, satisfy the elements of the claim for relief. No further corroboration is required.").

On June 15, 2005, the BIA acknowledged that it had previously erred in requiring Lin to submit corroborating evidence. However, the BIA affirmed its denial of Lin's asylum and withholding of removal claims on the ground that Lin had not met his burden of proof to establish eligibility for asylum. According to the BIA, Lin failed to demonstrate that his actions constituted "other resistance" to a coercive population control program. The BIA stated also that Lin had "not shown that the officials' threat to arrest him after he was involved in an altercation with one of the officials was on account of an anti-government opinion being imputed to him, rather than as a result of his having confronted the birth control officials, who were attempting to do their job." Lin timely appealed the BIA's decision.

## II

### STANDARD OF REVIEW

"Where . . . the BIA reviews the IJ's decision de novo, our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir. 2000) (internal quotation marks omitted). In the present case, the BIA reviewed the IJ's decision de novo; thus, we review the BIA's decision. "Interpretation of immigration statutes is a question of law that we review de novo, but with deference to the agency's interpretation." *Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1009 (9th Cir. 2005) (citation omitted). We review for substantial evidence the decision that an applicant has not established eligibility for asylum. *See Njuguna v. Ashcroft*, 374 F.3d 765, 769

(9th Cir. 2004). We must uphold the BIA's asylum determination if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *See Knezevic v. Ashcroft*, 367 F.3d 1206, 1210-11 (9th Cir. 2004) (internal quotation marks omitted); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) ("To reverse [a] BIA finding [a court] must find that the evidence not only *supports* that conclusion, but *compels* it . . . .").

## III

## DISCUSSION

**[1]** The Attorney General may grant asylum to any applicant who qualifies as a "refugee." 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as one who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In 1996, Congress added the following language to the refugee definition:

> *[A] person* who has been forced to abort a pregnancy or to undergo involuntary sterilization, or *who has been persecuted* for failure or refusal to undergo such a procedure or *for other resistance to a coercive population control program*, *shall be deemed to have been persecuted on account of political opinion*, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-689 (codified as amended at 8 U.S.C. § 1101(a)(42)(B)) (emphasis added). The plain language of

the amendment establishes eligibility for asylum under two categories relevant to this case. First, it provides that applicants who are forced to undergo sterilization are automatically "persecuted on account of a political opinion." 8 U.S.C. § 1101(a)(42)(B); *see also Zhang v. Gonzales*, 408 F.3d 1239, 1244 (9th Cir. 2005) ("Under 8 U.S.C. § 1101(a)(42)(B), an individual who has been forcibly sterilized is automatically deemed eligible for asylum."). Second, the amendment provides that an applicant is deemed "persecuted on account of political opinion" if he (1) suffers persecution (2) as the result of other resistance to a coercive population control program. 8 U.S.C. § 1101(a)(42)(B); *see also Li v. Ashcroft*, 356 F.3d 1153, 1158-60 (9th Cir. 2004) (en banc) (providing that an applicant qualifies for asylum under § 1101(a)(42)(B) if the applicant demonstrates persecution "on account of" resistance to a coercive population control program).

At issue here is the second category of asylum eligibility: the category that allows asylum based on an applicant's "other resistance" to a coercive population control program. In *Li*, we addressed the meaning of "other resistance" in the statute. 356 F.3d at 1158-60. There, the petitioner publicly announced her opposition to China's coercive population control policies. *Id.* at 1156. As a result, she was forced to endure a physically invasive and emotionally traumatic gynecological exam. *Id.* at 1158 n.4, 1160. The petitioner was also threatened with future exams, abortion, sterilization of her boyfriend, and arrest. *Id.* at 1158-59. We performed a two-step analysis of the petitioner's claim. First, we indicated that the forced gynecological examination and subsequent threats constituted persecution. *Id.* at 1158. Second, we determined that the petitioner resisted a population control program, both vocally and physically. *Id.* at 1160. She vocally resisted by publicly announcing her opposition to the program, and she physically resisted by struggling during the forced examination. *Id.* We further reasoned that "but for" her resistance to China's population control policies, she would not have been forcibly examined. *Id.* Accordingly, we concluded that

because the physical exam and subsequent threats constituted persecution, and because petitioner vocally and physically resisted a coercive population control program, the petitioner had been "persecuted on account of a political opinion" pursuant to § 1101(a)(42)(B). *Id.* at 1160-61.

## A. "Other Resistance To A Coercive Population Program"

[2] Lin argues that he was "persecuted on account of his political opinion" because he resisted the coercive population control policies of the Chinese government. In order to fit within the category of "other resistance to a coercive population program," an applicant must show that (1) the government was enforcing a coercive population program at the time of the pertinent events, and (2) the applicant resisted the program. 8 U.S.C. § 1101(a)(42)(B).

Coercive population control programs often vary depending on the country, city, or even local community. In *Li*, the population control program consisted of two parts. 356 F.3d at 1159-60. First, it set a minimum marriage age for men and women. *Id.* Second, it limited family size to one child per married couple. *Id.* We held that the government's program limiting family size, by itself, satisfied the "coercive population control program" prong in § 1101(a)(42)(B). *Li*, 356 F.3d at 1160 n.5.

[3] This case clearly involves a coercive population control program. Birth control officials informed Lin's brother that he had to be sterilized. Then, the officials attempted to destroy his property when he failed to show up for the procedure. Ultimately, Lin's brother was sterilized to limit the size of his family. Lin established this sequence of events through credible testimony, and the submission of several supplemental documents. Evaluated together, the evidence compellingly demonstrates that Chinese birth control officials were actively

enforcing a coercive population control program in Fujian at the time of the incident.

**[4]** Lin's petition turns on whether he met the second requirement — "other resistance" to the coercive population control program. Congress did not define the term "resistance" in § 1101(a)(42)(B). The ordinary meaning of the word "resistance" includes "passive or active opposition." WEBSTER'S NEW INTERNATIONAL DICTIONARY 1932 (3d ed. 1993). In *Li*, we indicated that an applicant can resist, as the term is used in § 1101(a)(42)(B), either vocally or physically. 356 F.3d at 1160. There, we held that the petitioner vocally resisted the one-child policy when she told a local population control official that she planned "to have many babies" because she did "not believe in the policy." *Id.* In addition, we found that the petitioner physically resisted by kicking and struggling when the officials forced her to undergo a gynecological exam. *Id.*

Here, the BIA concluded that Lin's actions did not constitute resistance to a coercive population control program. In doing so, the BIA suggested that an applicant does not satisfy the resistance component unless the applicant can demonstrate that the resistance was motivated by a disapproval of birth control policies. In response, Lin argues that the term "resistance" in § 1101(a)(42)(B) stands on its own, and does not require examination of potential motivations, as long as Lin demonstrated opposition to the population control program. As such, Lin argues that he satisfied the resistance prong simply by physically interfering with birth control officials while the officials destroyed family property in accordance with birth control policies.

**[5]** Lin's argument is persuasive. The plain language of § 1101(a)(42)(B) does not require Lin to resist birth control officials *because* he disapproves of the birth control program. Thus, Lin's subjective reasons for resisting need not be reviewed here. Rather, the sole question is whether the applicant claiming "resistance" physically or vocally resisted birth control officials while the officials performed duties related to

the birth control program. We hold that Lin's physical altercation with the birth control officials while the officials attempted to use coercive measures to enforce birth quotas constitutes physical resistance, and thus, satisfies the "resistance" prong of § 1101(a)(42)(B). This holding comports with the plain language of § 1101(a)(42)(B), the ordinary meaning of the term resistance, and our previous interpretation of the term in *Li*.

## B. Persecution

**[6]** Even though Lin resisted a coercive population control program, and thus satisfies the "on account of political opinion" component of § 1101(a)(42)(B), this finding does not automatically establish persecution. Instead, in accordance with *Li*'s two-step analysis, Lin must also demonstrate past persecution or a well-founded fear of future persecution. *See Li* 356 F.3d at 1158-61 (requiring the petitioner demonstrate both persecution and resistance to a coercive population control program to be eligible for asylum). Therefore, in accordance with *INS v. Ventura*, we remand to the BIA to determine whether, in light of this opinion, Lin suffered past persecution or has a well-founded fear of future persecution in connection with his resistance. 537 U.S. 12, 17-18 (2002).

## CONCLUSION

For the reasons outlined above, we reverse the BIA's decision, and remand the case for further proceedings consistent with this opinion.[1]

**REMANDED**.

---

[1]Lin claimed also that the BIA violated his due process rights by denying his asylum application on a ground not previously discussed by the IJ, i.e., failure to show "other resistance." This claim is without merit. In its decision, the IJ discussed the asylum requirements, and gave Lin clear notice that he failed to meet his burden of proof on the asylum claim. Thus, this case is distinguishable from *Campos-Sanchez v. INS*, 164 F.3d 448 (9th Cir. 1999).