**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| YUN CHEN, | No. 08-70792 |
| Petitioner, | Agency No. A077-122-812 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 17, 2011
San Francisco, California

Before: THOMAS, GOULD, and BYBEE, Circuit Judges.

Petitioner Yun Chen ("Chen") petitions for review of the Board of

Immigration Appeal's ("BIA") decision affirming the Immigration Judge's ("IJ")

determination that he is ineligible for asylum and withholding of removal because

of the lack of a nexus between the punishments he fears if returned to China and

the protected ground of resistance to China's coercive population control program.

_____

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Circuit Rule 36-3.

The BIA concluded that Chen's one year "labor education" sentence was punishment not for his underage marriage, but for his failure to appear to answer charges that he assaulted a family planning officer who interfered with his wedding. We have jurisdiction pursuant to 8 U.S.C. § 1252.

**I**

The IJ found Chen credible and gave full weight to his testimony, which together with his application materials tell this tale:

Chinese family planning laws prohibit men under 22 and women under 20 from marrying. Chen and his girlfriend Fang applied for a marriage license but were denied because they were 17. They decided to proceed with the ceremony, but family planning officials came to stop it. The officials declared that they would seize the couple's wedding furniture, decorations, and other belongings because Chen and Fang were defying the government. While they were physically forcing their way into Chen's house to take these items, per Chen's version of the incident, Chen attempted to stop them and one of the officers fell down. The police were called and the officers complained that Chen had assaulted them. Chen fled before he could be arrested.

Two days later, the government posted a notice which said that Chen had committed "illicit cohabitation," and "collided with law enforcement officials on

2

Mar. 11, 1999 and then escaped." As punishment, the Government confiscated Chen's marriage gifts, ordered him to turn himself in for investigation, and imposed a 20,000 yuan fine.

Chen fled China and came to the U.S. with false passport. After arriving in the United States, Chen learned of a second notice issued on April 12, 1999, stating that Chen:

> refused to accept punishment rendered by Jinsha Villagers Committee, and intentionally beat up law enforcement officials. Through discussions, Langqi Town People's Government and Langqi Town Public Security Station have made decisions as follows:
>
> I. Yun Chen's bridal house shall be dismantled by force.
>
> II. Yun Chen intentionally beat up law enforcement officials. His behavior has violated the [Criminal Code], and constituted crime. It is therefore ruled that Yun Chen is subject to one year of labor education.

Chen's "bridal house" was a room attached to his parents' house. In "dismantling it" the government destroyed the roof of the whole house, rendering it unhabitable. The government also revoked his household registration, which makes it impossible for Chen to return to China and apply for a job or school without being arrested.

3

## II

To show eligibility for asylum, an alien must establish that he or she is a refugee. 8 U.S.C. § 1158(b). A refugee is defined as a person who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). In 1996, Congress amended the definition of "refugee" to include:

> **a person** who has been forced to abort a pregnancy or to undergo involuntary sterilization, or **who has been persecuted** for failure or refusal to undergo such a procedure or **for other resistance to a coercive population control program**[. Such a person] shall be deemed to have been persecuted on account of political opinion . . . .

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, div. C, tit. V, sec. 601, 110 Stat. 3009 (codified as amended at 8 U.S.C. § 1101(a)(42)(B)) (emphasis added). We have held that China's law forbidding early marriage is a coercive population control program covered by § 1101(a)(42)(B)). *Li v. Ashcroft*, 356 F.3d 1153, 1159–60 & n.5 (9th Cir. 2004) (en banc). The BIA held, and Respondent does not dispute, that Chen's attempt to marry while underage constituted "other resistance to a coercive population control program" within the meaning of § 1101(a)(42)(B), and is a protected ground.

4

### III

Chen contends that his punishments were on account of his resistance to China's coercive population control program. He argues that his "'collision' with the officials was a direct disobedience against the birth control policy" and that the assault charge was a "bogus" attempt to "beef up the facts" in order to impose more severe punishment for his disobedience after he did not answer the initial government summons. Respondent argues that Chen's assault charge resulted from "a crime that occurred in the context of exercising resistance," so that the one year "labor education" sentence was on account of a crime, not on account of Chen's resistance. We disagree and hold that the record, fairly read, compels the conclusion that Chen's "labor education" sentence was imposed on account of his physical resistance to the implementation of China's birth control policy, a protected ground under § 1101(a)(42)(B).

"A criminal prosecution normally will not be 'persecution' absent some improper government motive for pursuing the matter." *Mabugat v. INS*, 937 F.2d 426, 429 (9th Cir. 1991). Foreign authorities enjoy wide latitude when enforcing their laws, but when police enforce an otherwise legitimate law that does not necessarily rule out a statutorily protected motive. *See Singh v. Gonzales*, 439 F.3d 1100, 1111–12 (9th Cir. 2006). Even a lawfully imposed punishment may

constitute persecution if imposed in part on account of a protected ground. *See*

*Nuru v. Gonzales*, 404 F.3d 1207, 1227–28 (9th Cir. 2005). In Pre-REAL ID act

cases, an applicant for asylum need not prove that he is being persecuted

exclusively on account of a protected ground, and he is eligible for relief "so long

as one of the motives for the feared persecutory conduct relates to a protected

ground." *Id.* at 1227.

Even when a petitioner begins a physical altercation with a government

official, "resistance to discriminatory government action that results in persecution

is persecution on account of a protected ground." *Guo v. Ashcroft*, 361 F.3d 1194,

1203 (9th Cir. 2004) (quoting *Chand v. INS*, 222 F.3d 1066, 1077 (9th Cir. 2000)).

In *Guo*, the petitioner was arrested twice by Chinese officials, the first time for

participating in an illegal underground Christian church, the second time for

seeking to stop a police officer who was removing a cross from the tomb of a

fellow congregant. *Id.* at 1197–98. The BIA adopted the decision of the IJ, who

concluded that "the first arrest was merely an effort of the police to harass the

respondent" and did not rise to the level of persecution, while "the second arrest

was due to the respondent beginning an altercation with the police." *Id.* at 1202.

We granted the petition, holding that the first arrest constituted persecution and the

second arrest was on account of a protected ground because it was a result of

petitioner "resist[ing] discrimination by trying to stop the Chinese police from removing a cross from a tomb during a funeral." *Id.* at 1203.

In the context of 8 U.S.C. § 1101(a)(42)(B) we have held that a petitioner's "physical altercation with [Chinese] birth control officials while the officials attempted to use coercive measures to enforce birth quotas constitutes physical resistance, and thus, satisfies the 'resistance' prong of § 1101(a)(42)(B)." *Li Bin Lin v. Gonzales*, 472 F.3d 1131, 1135 (9th Cir. 2007). In *Lin*, birth control officers came to petitioner's house to seize and destroy household furnishings to punish petitioner's brother (also a member of the household), who had not reported for a government ordered vasectomy. *Id.* at 1132. The petitioner tried to stop the officials, but they "beat him up" and called the police to arrest him for resisting. The petitioner went into hiding to avoid arrest, and eventually fled to the United States. The BIA held that the petitioner's actions were not "resistance" under 8 U.S.C. § 1101(a)(42)(B), and that he had

> not shown that the officials' threat to arrest him after he was involved in an altercation with one of the officials was on account of an anti-government opinion being imputed to him, rather than as a result of his having confronted the birth control officials, who were attempting to do their job.

*Id.* at 1133. We rejected the BIA's reasoning and held that the petitioner's "subjective reasons for resisting need not be reviewed," and that "the sole question

7

is whether the applicant claiming 'resistance' physically or vocally resisted birth control officials while the officials performed duties related to the birth control program." *Id.* at 1135. The striking and substantial similarity of this case and *Lin* suggests that Chen's physical altercation with the birth control officials who were blocking his wedding is physical resistance within the meaning of § 1101(a)(42)(B).

Respondent would distinguish *Lin* based on the Chinese government's "penal decision" that Chen "beat up" one of the family planning officials, contending that when "physical resistance becomes an assault, that takes it out of the resistance realm and into the criminal realm." Exercising resistance does not give one carte blanche to commit crimes, but a foreign government unhappy with being confronted by resistance to its oppressive policies might characterize even reasonable and limited physical resistance as assault. The mere fact that the resistance itself was charged as a crime in a petitioner's home country does not prevent it from being "resistance" for purposes of United States immigration law. Otherwise, a foreign government would have no problem negating the clear statutory command of Congress, which has attempted to give asylum to those persecuted as a result of resisting an oppressive system of population control.

Here, Chen says that there was a scuffle when birth control officials forced their way into his home. He claims that people were pushing and shoving each other, and that a birth control officer fell down after bumping into a television and then accused Chen of hitting him on purpose. We credit Chen's version of events because he was deemed credible, and neither the IJ nor the BIA has taken issue with his characterization. These facts do not make Chen's behavior so egregious that it should no longer be characterized as physical resistance for the purpose of United States immigration law, and a penal decision convicting Chen of assault *in absentia* does not change that.

We would take a different view, for example, if Chen had shot an official who came uninvited to his wedding, or if he assaulted the official with a deadly weapon. And there may be other circumstances where a petitioner's excessive force is sufficient to take his or her actions out of the realm that we consider "resistance," so that any resulting punishment by a foreign government could not be said to be "on account of" an alien's resistance, and in such cases the punishment might fit the crime. Foreign governments, moreover, make their own laws and a court in the United States is not well positioned to assess if the punishment for crime in a foreign land is excessive. But we do decide that the Chinese government's *in absentia* penal decision that it would arrest and imprison

9

Chen for one year for assault in the circumstances here, which on the facts established by Chen's credible testimony do not show much more than a shoving match, does not prevent his physical resistance from satisfying the "resistance" prong of § 1101(a)(42)(B).

"[A] court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002). We grant Chen's petition for review and remand to the BIA for an initial determination of whether Chen's punishments, including his one year "labor education" sentence and other deprivations, cumulatively rise to the level of persecution.[1]

**PETITION GRANTED AND REMANDED.**

---

[1] Because we grant the petition as to Chen's asylum and withholding of removal claims, we need not reach Chen's claim for CAT relief.