Faisal SAIDANE, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 93–70881.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1997.

Decided Nov. 14, 1997.

Angela M. Bean, Nervo & Bean, San Francisco, CA, for petitioner.

Alison R. Drucker and Tina Potuto, U.S. Department of Justice, Washington, DC, for respondent.

\* Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

Before: TASHIMA and THOMAS, Circuit Judges, and SEDWICK, District Judge.\*

TASHIMA, Circuit Judge.

Faisal Saidane seeks review of a decision of the Board of Immigration Appeals ("BIA") ordering his deportation and denying him a nine-month voluntary departure period. Saidane is a citizen of Tunisia who came to the United States, overstayed a visitor's visa in 1988 and was denied permanent resident status. In September, 1988, Saidane married Grace Padilla ("Padilla"), an American citizen. The present dispute centers around the question of whether that marriage was a "sham," entered into for immigration purposes alone. Saidane claims on appeal that he was denied the fundamentally fair immigration hearing that due process requires. We have jurisdiction under 8 U.S.C. § 1105a(a), and grant the petition.

## 1. Background

At Saidane's deportation hearing, the Immigration and Naturalization Service ("INS") offered Padilla's affidavit into evidence. In it, she repudiated her marriage with Saidane, claiming the two were married purely for immigration purposes. By its own admission, the INS had the opportunity to call Padilla to testify in person to the circumstances surrounding the marriage, but it chose not to do so. Instead, it relied on her affidavit. On this issue, the INS attorney responded to the Immigration Judge's ("IJ") inquiry as follows:

> Your honor, she [Padilla] is, she was available as of 1:00 this afternoon to testify. . . . I have not seen fit to use her as a witness because I don't think it is material to the issues now raised in this case. But there has been a withdrawal of the visa petition and she has no intention of filing another visa.

Following this colloquy, the IJ offered to issue a subpoena to secure Padilla's testimony. Saidane requested the subpoena and his attorney served it on Padilla, but she did not honor it.

At the deportation hearing, the government also introduced an excerpted version of Saidane's December 15, 1988, INS interview. The transcript demonstrated that Saidane had made several representations about the details of his marriage that were, in fact, false. However, Saidane admitted on direct examination, even before the transcript had been introduced, to having made the misrepresentations in the transcript.

The IJ found Saidane to be deportable and denied his request for voluntary departure. The BIA affirmed. Saidane contends that the admission of Padilla's affidavit and the excerpted transcript denied him the fundamentally fair hearing to which he was entitled.

### 2. Use of Padilla's Affidavit

■ Congress has provided that an alien in a deportation hearing must have "a reasonable opportunity ... to cross-examine witnesses presented by the government." 8 U.S.C. § 1252(b)(3). While the rules of evidence are not applicable to immigration hearings, *Baliza v. INS*, 709 F.2d 1231, 1233 (9th Cir.1983), "the government's choice whether to produce a witness or to use a hearsay statement [cannot be] wholly unfettered." *Id.* at 1234. "The test [as to whether a hearsay affidavit has been properly admitted] is whether the statement is probative and whether its admission was fundamentally fair." *Id.* at 1233. Thus, we require that "the government must make a reasonable effort in INS proceedings to afford the alien a reasonable opportunity to confront the witnesses against him or her." *Cunanan v. INS*, 856 F.2d 1373, 1375 (9th Cir.1988). This duty is not satisfied where the "government ... effectively ... shift[s] the burden of producing its witness onto [the alien.]" *Id.*

■ The question presented in this case is whether the government made "a reasonable effort ... to afford the alien a reason-

able opportunity to confront the witnesses against him or her." *Id.* at 1375. We hold that it did not. Here, the INS made no effort to call an admittedly available witness and relied instead on that witness's damaging hearsay affidavit. This rendered the hearing fundamentally unfair. That the IJ issued a subpoena for the alien to serve on the government's witness did not cure that unfairness.

In *Cunanan,* the INS sought to rely upon the unsupported affidavit of Cunanan's wife in making its case that Cunanan's marriage had been a sham for immigration purposes. The INS made no efforts at all to produce Cunanan's wife. *See id.* at 1375. When asked by the IJ whether it would attempt to secure the wife's testimony, the INS responded, "the Respondent [and his counsel] knew the hearing was today and either of them could ask the wife to also appear since they wanted to cross-examine." *Id.* We found the use of an affidavit under these circumstances fundamentally unfair and held that the government may not "effectively ... shift the burden of producing its witness onto" the alien. *Id.*

As in *Cunanan,* the INS here attempted to shift the burden on the alien to produce its own witness. The only difference in this case is that the IJ issued a subpoena for Saidane to serve on the witness. This minimal effort of an IJ cannot suffice to satisfy the government's obligation to make reasonable efforts to produce its witnesses. In *Bachelier v. INS*, 625 F.2d 902 (9th Cir. 1980), the only case on which the INS relies, the government's efforts were far more substantial. There, the INS offered to transfer the deportation hearings from San Francisco to Omaha, Nebraska, where the witnesses in question were located, and the IJ offered to allow the alien's attorney to take depositions or send written interrogatories to the witnesses. *Id.* at 904.

In *Bachelier,* the INS cooperated in making a good faith effort to overcome considerable logistical difficulties and to afford the alien an opportunity to cross-examine its witnesses. Here, the only apparent reason for the INS's decision not to call Padilla, but to rely on a her affidavit, was to avoid subject-

ing her to cross-examination. The government thus shifted the burden of producing its witness onto the alien. *Cunanan,* 856 F.2d at 1375. It enjoyed a "wholly unfettered . . . choice whether to produce a witness." *Baliza,* 709 F.2d at 1234. The INS did not make a good faith effort to afford the alien a reasonable opoportunity to confront and to cross-examine the witness against him. Under the circumstances of this case, we conclude that the admission of this hearsay affidavit denied Saidane a fundamentally fair hearing.[1]

### 3. Use of Transcript Excerpt

█ The INS made it clear that the only purpose in introducing the partial, excerpted version of Saidane's interview was to establish that Saidane lied in his interview about the status of his marriage and living arrangements. Saidane admitted at the hearing that he had made representations in his interview about his marriage and living arrangements that were, in fact, factually inaccurate. It is difficult to see how Saidane could have been prejudiced by the government's use of the partial transcript when he admitted, on direct examination, the very factual inconsistencies that the transcript was meant to demonstrate and that form the basis of the government's contention that Saidane was lying.

Moreover, Saidane does not specify in his brief the manner in which the partial transcript was misleading or incomplete. He offers only possible alternative explanations that "might" support an innocuous reading of his misrepresentations. Saidane had the opportunity to explain the statements made in his interview. He chose, however, not to pursue the issue at the hearing and did not offer any explanation. Under these circumstances, the government's use of the partial transcript to support its claim that Saidane lied at his INS interview did not render his hearing fundamentally unfair.

### 4. Conclusion

The petition for review is **GRANTED**, and the case is **REMANDED** for a hearing that comports with due process.

---

**1.** Saidane also contends that the INS violated 8 C.F.R. § 287.4(c) because an IJ is not one of the officials listed who is authorized to designate the person to serve a subpoena. Subsection (c) applies, however, only to "subpoena[e] issued under this section." And § 287.4(a) authorizes the officials listed therein to issue subpoenae "for use in criminal or civil investigations," *i.e.,* it does not apply to proceedings in immigration court.