**Harinder SINGH, Petitioner,**

v.

Alberto R. GONZALES,* Attorney
General, Respondent.

No. 03–71571.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2004.

Decided March 28, 2005.

Vinay R. Chari, Esq., Law Offices of
Virender Kumar Goswami, San Francisco,
CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Jeffrey J. Bernstein, Esq.,
Terri J. Scadron, Esq., Alan S. Gale,
Washington, DC, for Respondent.

Before: PAEZ, BERZON, and BEA,
Circuit Judges.

MEMORANDUM **

Harinder Singh, a native and citizen of
India, petitions for review of the Board of
Immigration Appeals' ("BIA") summary
affirmance of an Immigration Judge's
("IJ") denial of his applications for asylum,
withholding of removal, and relief under

---

* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General
of the United States, pursuant to Fed. R.App.
P. 43(c)(2).

** This disposition is not appropriate for publication and may not be cited to or by the
courts of this circuit except as provided by
Ninth Circuit Rule 36–3.

the Convention Against Torture ("CAT"). Reviewing the IJ's adverse credibility determination for substantial evidence, *see Lata v. INS*, 204 F.3d 1241, 1244–45 (9th Cir.2000), we vacate the BIA's order and remand for further proceedings concerning Singh's claims.

■ Several of the IJ's reasons for the adverse credibility determination are not "valid grounds upon which to base a finding that the applicant is not credible." *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658 (9th Cir.2003) (quotation marks and citation omitted). First, the IJ doubted Singh's account of the circumstances leading to his two claimed arrests. In making these findings, the IJ engaged in impermissible speculation as to how militants would act, *see Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996), and misapprehended Singh's testimony by disregarding part of his account of the second arrest, namely, that the police's motive was to determine whether visitors to Singh's home were militants. *See He v. Ashcroft*, 328 F.3d 593, 600 (9th Cir.2003).

■ Second, the IJ identified an inconsistency between Singh's testimony and his mother's affidavit. "An adverse credibility finding is not based on substantial evidence when '[t]he BIA [or the IJ] did not comment on [an applicant's] explanation, nor suggest any reason that it found his explanation not credible." ' *Guo v. Ashcroft*, 361 F.3d 1194, 1201 (9th Cir.2004) (quoting *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998)); *see also Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001). Here, the IJ did not address Singh's explanation that his family may not have told him about the second bribe.

■ Third, the IJ questioned the existence of two threatening letters from the militants, on the ground that Singh would not have burned such letters. This was impermissible conjecture. *See Lopez–Reyes*, 79 F.3d at 912.

■ Fourth, the IJ cited Singh's failure to provide corroborating evidence of his hospital stay. The IJ made no finding, however, that the documentation he desired is "easily available." In these circumstances, an adverse credibility determination based on failure to provide corroborating evidence is not adequately supported. *See Sidhu v. INS*, 220 F.3d 1085, 1091–92 (9th Cir.2000).

■ We turn now to the crux of this case. The IJ also relied upon the "respondent's alleged marriage to a U.S. citizen. . . . Documents attached to the record of sworn statement ... support a finding that the respondent offered money to Dawn Jenkins in order to obtain immigration benefits, and that 2,000 dollars was paid in actuality."

Jenkins was not available to testify at Singh's removal hearing, where he was surprised by her allegations. It is arguable that her statement should therefore not have been admitted. *See Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir.1997); *Cunanan v. INS*, 856 F.2d 1373, 1374–75 (9th Cir.1988); *see also* 8 U.S.C. § 1229a(b)(4)(B) ("the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government"). Singh failed to exhaust this evidentiary claim before the BIA, however, and did not raise it in his opening brief in this court. We therefore lack jurisdiction to consider the claim that Jenkins' statement should have been excluded by the IJ. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir.2004) (exhaustion is mandatory and jurisdictional); *Martinez–Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir.1996) (discussing waiver).

Accepting the IJ's crediting of Jenkins' statement, we recognize at least two logical inferences that can be drawn from Singh's entry into a marriage with an American for the purpose of adjusting his immigration status. One is that he could have doubted the efficacy of the asylum process and engaged in a backup plan to ensure that he would not be forced to return to a country in which he was genuinely persecuted. Asked why he married Jenkins, Singh responded that fear was a factor: "One thing [is] that I was afraid to go back to India, and then I liked her also."

On the other hand, a finder of fact could infer that Singh knew that his asylum claim was fabricated and was unlikely, for that reason, to succeed. Pessimism about the prospects of a made-up refugee claim may have led Singh to attempt to stay in the United States—which had already provided him with safe harbor—by any means necessary, including paying Jenkins for marriage.

On the latter view, Singh's actions and testimony could be interpreted fundamentally to undermine his asylum claim. The fraudulent marriage may not be simply a reaction to his alleged fear of persecution, in the way we have deemed deceptions that facilitate an asylum applicant's travel and entry into the United States to be "incidental" to an asylum claim. Falsehoods used by an asylum applicant to arrive in the United States do not support an inference that any later asylum claim is fabricated. *See Akinmade v. INS*, 196 F.3d 951, 956 (9th Cir.1999); *see also Kaur v. Ashcroft*, 379 F.3d 876, 889 (9th Cir. 2004). Entering into a fraudulent marriage after arrival, however, could support the inference that the alien does not expect an asylum claim to succeed, because it is not valid.

The IJ's decision does not explain which inference he drew, if either was drawn, or why. Nor did the IJ consider Singh's explanation that he entered the marriage in part due to his being "afraid to go back to India." *See Guo*, 361 F.3d at 1201. In these circumstances, it is appropriate to remand the proceedings for the agency to clarify its reasoning. *See Stoyanov v. INS*, 172 F.3d 731, 736 (9th Cir.1999) (holding that the agency "must provide a reasoned analysis of the legal basis for its holding, specifying as well the particular facts on which that holding relies").

VACATED and REMANDED.

BEA, J., concurring.

I separately concur to state that, in my view, this court's remand does not eliminate the opportunity for the IJ to conclude that the timing of the marriage here (*i.e.*, Singh married Jenkins almost 6 months *after* deportation proceedings commenced), may provide substantial evidence for the IJ to make an adverse credibility determination with respect to Singh's asylum petition. The IJ could infer from the timing of the marriage that Singh entered into the fraudulent marriage *because* he had doubts as to the merits of his case, and did not expect his asylum claim to succeed, and *not* because he was fleeing persecution. *Cf.* Section 5 of the Immigration Marriage Fraud Amendments of 1986, 8 U.S.C. §§ 1154(h) & 1255(e) (presumption that an alien who marries an American citizen *during* deportation or exclusion proceedings entered into a fraudulent marriage and requiring such alien to reside *outside* the United States for two years before the INS may consider adjustment in the alien's immigration status).