**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SAMUEL ISHIMWE,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.    16-73005

Agency No. A099-461-896

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 16, 2019
Portland, Oregon

Before:  N.R. SMITH, WATFORD, and R. NELSON, Circuit Judges.

Samuel Ishimwe petitions for review of the decision of the Board of

Immigration Appeals ("BIA") denying his applications for asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT") based on the

immigration judge's ("IJ") adverse credibility determination.  We have jurisdiction

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

under 8 U.S.C. § 1252.  We grant Ishimwe's petition and remand it to the BIA for further review.

The BIA found no clear error in the IJ's adverse credibility finding, specifically identifying several of the IJ's noted discrepancies.  *See Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008) (limiting our review to "reasons explicitly identified by the BIA").  The BIA did not identify any inconsistency that, by itself, would support an adverse credibility finding.  Rather, the BIA noted that "the number of inconsistencies [was] problematic" and that "[w]hile some of [the inconsistencies] standing alone may not support an adverse credibility finding, they do support one under the totality of the circumstances."[1]

The BIA relied on nine of the IJ's adverse credibility findings.  Of these nine, seven were not supported by substantial evidence.

First, the BIA improperly relied on an inconsistency between Ishimwe's testimony and a transcript of the testimony of an anonymous witness (Witness AAA), who testified in an unrelated criminal proceeding.  As a general rule, "Congress has provided that an alien in a deportation hearing must have 'a

---

[1] The IJ also recognized that some of the discrepancies were not enough on their own to support an adverse credibility finding, but "considering the totality of the circumstances," the IJ concluded that Ishimwe's testimony lacked the "requisite ring of truth."  The IJ similarly did not identify any discrepancy that, by itself, could support an adverse credibility finding.

2

reasonable opportunity to cross-examine witnesses presented by the government.'" *Saidane v. INS*, 129 F.3d 1063, 1065 (9th Cir. 1997) (citation and alteration omitted). The submission of this evidence was neither probative nor fundamentally fair. *See Sanchez v. Holder*, 704 F.3d 1107, 1109 (9th Cir. 2012) (per curiam). Further, the testimony of Witness AAA used to "impeach" Ishimwe was not pertinent to Witness AAA's testimony before the foreign tribunal. As the government conceded, Witness AAA was not cross-examined with regard to the number of people killed or the location of the bodies, because those facts were not at issue.

Second, even if it were appropriate to use the testimony of Witness AAA, the BIA erred in its conclusion that Witness AAA testified that Ishimwe's nephew killed the pastor. Witness AAA testified that the Interahamwe was behind the killings but did not testify to specific names. Further, substantial evidence does not support the asserted inconsistency with regard to whether Ishimwe *knew* who killed the pastor, because the IJ and the BIA failed to provide "specific, cogent reason[s]" for rejecting Ishimwe's reasonable explanation. *See Rizk v. Holder*, 629 F.3d 1083, 1087-88 (9th Cir. 2011).

Third, substantial evidence does not support the BIA's finding about why Ishimwe was summoned by the Gacaca Court. The BIA relied on only one of the

IJ's conclusions surrounding Ishimwe's alleged inconsistent testimony regarding the Gacaca Court: whether Ishimwe had ever been accused of killing the pastor. Although Ishimwe was confronted, neither the IJ nor the BIA addressed Ishimwe's explanation that being "answerable" for the pastor's death was equivalent to being asked for information on who killed the pastor; not that he, himself, was personally being accused of the murder. The failure to consider Ishimwe's explanation was error. *See Soto–Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009).

Fourth, substantial evidence does not support the BIA's finding that there was an inconsistency with regard to why Ishimwe claimed he was targeted by Tutsi soldiers. Ishimwe stated in both his asylum application and his testimony that he was targeted because he was Hutu, educated, and wealthy, and because he helped with the pastor's burial. Thus, there was no inconsistency.

Fifth, substantial evidence does not support the BIA's finding that Ishimwe was inconsistent with regard to how he and his family fled their home in March 2006. Notably, it is difficult to determine whether his testimony was inconsistent with his asylum application. In his asylum application, he asserted that he and his family all fled in different directions. Similarly, in his testimony, when he was asked whether he and his family all went to "the neighbor's house," he responded that they went to "neighbors' places." However, upon further questioning,

4

Ishimwe only named one neighbor. Although he was confronted about this perceived inconsistency (whether they all fled to the same neighbor or different neighbors), Ishimwe never offered an explanation other than repeating his claim that he went to one neighbor and his family went to other neighbors. *See Quan v. Gonzales*, 428 F.3d 883, 886 (9th Cir. 2005) (finding an IJ's adverse credibility determination unsupported by substantial evidence where "there was no true inconsistency").

Sixth, although the record supports the BIA's finding that Ishimwe failed to testify on direct examination that the Tutsi soldiers showed him a grenade when they broke into his home, this finding (under the circumstances) is trivial. *See Ren v. Holder*, 648 F.3d 1079, 1085 (9th Cir. 2011) (noting that we "must take into account the totality of the circumstances, and should recognize that the normal limits of human understanding and memory may make some inconsistencies or lack of recall present in any witness's case") (alterations and quotation marks omitted). Relevant here is that Ishimwe testified consistently that the Tustsi soldiers left a grenade in front of his home after they broke in to the house. Whether they showed him the grenade prior to leaving it does not enhance Ishimwe's claim. When Ishimwe was confronted with the omission, Ishimwe confirmed that they showed him a grenade when they broke in to the house.

Seventh, substantial evidence does not support the BIA's determination that Ishimwe's omission (that he fled to his mother's house prior to fleeing to the Congo) was significant. In Ishimwe's asylum application, he asserted after he and his family were attacked in April 1994, he decided to flee to the Congo. In his testimony before the IJ, he detailed his flight to the Congo, which included a two-to-three-month stay at his mother's home before he left for the Congo. When confronted with this omission, Ishimwe provided a confused explanation. Although Ishimwe's explanation was not clear, the omission was a "collateral detail[]" of how he fled Rwanda; it's inclusion in his testimony did not create a "much different—and more compelling—story of persecution than his initial application."[2] *Zamanov v. Holder*, 649 F.3d 969, 973–74 (9th Cir. 2011). Thus, the omission "is insufficient to uphold an adverse credibility finding." *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016) (internal quotation marks omitted).

Finally, substantial evidence may support the BIA's conclusion that Ishimwe was inconsistent with regard to how his sister-in-law and her children were killed and his location during these events. Generally, we deny a petition if a single

---

[2] Neither the IJ nor the BIA suggested that this omission in detail was material or an attempt to enhance his claim of persecution.

ground is supported by substantial evidence. *Rizk*, 629 F.3d at 1087. However, because these two findings do not go to the heart of the matter and are unrelated to his personal claims of persecution (save for general persecution against Hutu people) and because the BIA and the IJ relied on "the number of inconsistencies" and stated that some of the inconsistencies alone would not support an adverse credibility finding, we do not know how the BIA would evaluate these two remaining claims in light of the totality of the circumstances. Thus, we cannot conduct a meaningful review of the BIA's decision, *see Delgado v. Holder*, 648 F.3d 1095, 1107–08 (9th Cir. 2011) (en banc), and therefore remand to the BIA to determine whether these two remaining inconsistencies continue to support an adverse credibility finding under the totality of the circumstances.

**PETITION FOR REVIEW GRANTED; REMANDED.**

*Ishimwe v. Barr*, 16-73005

R. NELSON, Circuit Judge, dissenting:

I respectfully dissent. I would deny Ishimwe's petition because substantial evidence supports at least four of the IJ's adverse credibility findings relied upon by the BIA.

The panel majority concluded that two of the inconsistencies were supported by substantial evidence. Because, according to the panel majority, those inconsistencies did not go to the heart of Ishimwe's claim and were unrelated to his personal claims of persecution, the panel remanded. However, under the REAL ID Act, which applies here, an inconsistency may serve as the basis for an adverse credibility determination *without regard to whether the inconsistency goes to the heart of the claim.* 8 U.S.C. § 1158(b)(1)(B)(iii). The inconsistencies at issue, even those with which the majority agrees, are not "mere trivial error[s] such as a misspelling," *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010) (citation omitted), "typographical errors[,] or inconsistencies in specific dates and times," *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011). As such, the inconsistencies identified by the panel majority warrant denial of the petition.

First, the panel agrees Ishimwe gave contradictory accounts of the deaths of his sister-in-law and her family. Regardless of whether these inconsistencies go to the heart of Ishimwe's claim (which is not required), they are deeply troubling: his

1

application states they were "massacred [] with bullets" and those who did not die immediately "were smashed with hoes" by Tutsi soldiers, yet he testified that Tutsi soldiers killed them by burning down the house in which they were gathered. When confronted with this inconsistency, Ishimwe responded, "the point is that they died." Ishimwe was also inconsistent as to his location during these events.

The panel majority also found a third inconsistency supported by the record but found it "trivial." Ishimwe's application states that Tutsi soldiers "broke the glasses of the window of my bed room and showed me a grenade, I, my wife and children screamed for assistance then by the grace of God they left. That night they left the grenade in front of my home." When testifying, he stated the soldiers "did not come into my house" and that he discovered the grenade "[i]n the morning when we woke up."

This inconsistency was not trivial; it relates to the basis for his claim of persecution. *See Singh v. Gonzales*, 439 F.3d 1100, 1108 (9th Cir. 2006) ("An inconsistency goes to the heart of a claim if it concerns events central to petitioner's version of why he was persecuted and fled."). Even assuming, as the panel did, that a direct confrontation in which soldiers show him a grenade while his family screams does not enhance a claim of persecution when compared to discovering a grenade the following morning, inconsistencies that do not enhance a claim of persecution are still relevant to a credibility determination when

2

accompanied by a pattern of inconsistency. *See Don v. Gonzales*, 476 F.3d 738, 742 (9th Cir. 2007); *Kaur v. Gonzales*, 418 F.3d 1061, 1067 (9th Cir. 2005) ("[W]hen inconsistencies that weaken a claim for asylum are accompanied by other indications of dishonesty—such as a pattern of clear and pervasive inconsistency or contradiction—an adverse credibility determination may be supported by substantial evidence.").

Additionally, Ishimwe was inconsistent about his knowledge of who killed Pastor Amon. He initially testified several times that he did not know who killed Pastor Amon. When later confronted with a document showing that his brother was charged with participating in the murder, Ishimwe revealed he was told in 1994 that his nephew participated in the murder of Pastor Amon. He confirmed that he and his brother both believed this to be true. When confronted with this inconsistency and asked why he did not mention this when asked earlier, Ishimwe stated that he didn't know "whether he's the one that did it, but he was in the group which went there."

The IJ considered Ishimwe's "explanation for the inconsistency," and "considered [it when] weighing credibility," *Shrestha*, 590 F.3d at 1044 (citations omitted), but found he "did not provide a sufficient explanation as to why he initially failed to share this information with the Court when asked about the identify of Pastor Amon's killer." However, the panel majority found that "the IJ

3

and BIA failed to provide 'specific, cogent reason[s]' for rejecting Ishimwe's reasonable explanation."

As this additional inconsistency was yet another specific and cogent example offered in support of the IJ's adverse credibility determination, the IJ's limited discussion why Ishimwe's explanation was insufficient does not render the determination unsupported. *See Rizk*, 629 F.3d at 1088 ("[T]he requirement of a reasoned decision in federal sentencing cases depends on the context of each individual case and that '[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends on the circumstances.'" (describing the holding in *Rita v. United States*, 551 U.S. 338, 356–59 (2007))). "An IJ is not obliged to provide a protracted written or oral analysis of the alien's proffered explanation," *id.* at 1088, nor does "[t]he obligation to provide a specific, cogent reason for a negative credibility finding [] require the recitation of unique or particular words," *de Leon-Barrios v. I.N.S.*, 116 F.3d 391, 394 (9th Cir. 1997).

We should have denied Ishimwe's petition and upheld the IJ's adverse credibility determination. *See* 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). I disagree with the panel majority's statement that we do not know how the BIA would evaluate the two findings that it did find supported in the absence of the other seven. The BIA noted that "[w]hile

4

*some* of these matters *standing alone may not* support an adverse credibility finding, they do support one under the totality of the circumstances."  (Emphasis added).  The panel majority wrongly states the BIA found some inconsistencies alone "would not" support an adverse credibility finding.  Even under the panel's view, substantial evidence supports two of the adverse credibility findings (and others are supported by substantial evidence)—neither finding stands alone.

This is sufficient to deny the petition.  This court "must uphold the IJ's adverse credibility determination *so long as even one basis* is supported by substantial evidence."  *Rizk*, 629 F.3d at 1088, 1089 (emphasis added) (focusing on only "one of the key contradictions the IJ identified"); *see also Lianhua Jiang v. Holder*, 754 F.3d 733, 738–39 (9th Cir. 2014) (finding one of the inconsistencies relied upon by the BIA sufficient to uphold the IJ's adverse credibility finding and noting "we need not comment on the remaining grounds cited").