**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CESAR ALCARAZ-ENRIQUEZ,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,
*Respondent*.

No. 15-71553

Agency No.
A075-191-250

ORDER AND
OPINION

On Remand from the United States Supreme Court

Filed December 14, 2021

Before: Carlos T. Bea and N. Randy Smith, Circuit Judges,
and David C. Nye,[*] District Judge.

Order
Opinion by Judge Bea

---

[*] The Honorable David C. Nye, Chief United States District Judge
for the District of Idaho, sitting by designation.

**SUMMARY**[**]

**Immigration**

In an order for publication, the panel (1) withdrew the opinion filed on September 16, 2021, on remand from the Supreme Court; (2) replaced it with a superseding opinion; and (3) unanimously voted to deny the petition for panel rehearing, and ordered that no further petitions for rehearing or rehearing en banc would be entertained. In the superseding opinion, the panel granted in part and denied in part Cesar Alcaraz-Enriquez's petition for review of a decision of the Board of Immigration Appeals, and remanded, concluding that: (1) in the absence of an opportunity to cross-examine its declarants the Board erred in relying on a probation report to conclude that Alcaraz had been convicted of a particularly serious crime; and (2) the Board did not err in denying Alcaraz's application for deferral of removal under the Convention Against Torture.

The panel first addressed the Board's determination that Alcaraz's conviction for inflicting corporal injury on a cohabitant, in violation of California Penal Code § 273.5(a), constituted a particularly serious crime rendering him ineligible for withholding of removal. In concluding that he had been convicted of a particularly serious crime, the agency credited a probation report recounting only Alcaraz's girlfriend's narrative of the domestic incident, over Alcaraz's testimony at his immigration judge hearing. The panel previously granted Alcaraz's petition on two bases: (1) that the Board erred in not requiring the Department of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Homeland Security to make a good-faith effort to make available for cross-examination the author and the declarant of the probation report; and (2) that in the absence of any express adverse credibility determination from the immigration judge the Board erred in not deeming true Alcaraz's testimony. In *Garland v. Ming Dai*, 141 S. Ct. 1669 (2021), the Supreme Court reversed the panel's second basis for granting the petition, vacated the panel's entire prior decision, and remanded for further proceedings.

Observing that the Supreme Court did not disturb the first basis for its prior decision, the panel wrote that because the Supreme Court vacated all of the panel's prior opinion, it had to address again Alcaraz's argument that he was denied a fair hearing because he was never given an opportunity to cross-examine the probation report's author or the declarant, his girlfriend. The panel reaffirmed its prior holding and concluded that, under the circumstances of this case, the Board's reliance on the probation officer's report was error.

The panel observed that this court has held that an IJ may consider all reliable information in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction. The panel wrote that this reliability question is particularly important when the IJ is relying on a document that, like a probation officer's report, compiles impressions and testimony of other witnesses who may not testify themselves.

The panel wrote that this court has also recognized that the evidence introduced into removal proceedings remains subject to other statutory and constitutional limitations, including that the admission of evidence must be

fundamentally fair. The panel wrote that the government deprives an individual of a fundamentally fair hearing when it fails to make a good faith effort to afford him a reasonable opportunity to confront and to cross-examine the witness against him. This good faith requirement typically requires the government to make some affirmative effort to procure the live testimony its declarants, and does not permit the government to shift that burden onto the applicant to produce the witness.

The panel wrote that these principles—reliable evidence and fundamental fairness—converge when it comes to Alcaraz's probation report. Despite its obligation to do so, the Department of Homeland Security made no effort—good faith or otherwise—to procure for Alcaraz's cross-examination the witnesses whose testimony was embodied in the probation report, and upon whose testimony the Board ultimately relied in denying his application. The panel wrote that this failure impugned the probation report's reliability and rendered the Board's procedure fundamentally unfair.

The panel concluded that this error caused Alcaraz prejudice because if the probation report had been found to be unreliable on cross-examination, it is possible that the IJ could have found Alcaraz credible and, based on Alcaraz's version of events, found that Alcaraz's conviction was not for a particularly serious crime, and that he was not barred from seeking withholding of removal. The panel remanded for a new hearing.

Observing that *Ming Dai* upended the panel's second basis for granting the petition and laid out the proper procedure on petition for review when there is no explicit adverse credibility determination, the panel concluded that it would be futile to analyze this issue before a new hearing is held. The panel explained that cross-examination of the

author of the probation report or the declarant could affect both the IJ's credibility determination as to Alcaraz and the Board's decision to credit the probation report's version of events over Alcaraz's.

The panel reaffirmed its prior holding denying Alcaraz's petition as to his application for deferral of removal under CAT.

---

**COUNSEL**

Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for Petitioner.

John W. Blakeley, Assistant Director; Erica B. Miles and Aimee J. Carmichael, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**ORDER**

The Opinion filed on September 16, 2021, is **WITHDRAWN** and replaced with a superseding Opinion filed concurrently with this Order.

The panel unanimously voted to deny the petition for panel rehearing. Accordingly, appellant's petition for panel rehearing filed December 1, 2021, is **DENIED**. Fed. R. App. P. 35. No further petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

**OPINION**

BEA, Circuit Judge:

Petitioner Cesar Alcaraz-Enriquez ("Alcaraz"), a native and citizen of Mexico, petitions for review of the order of the Board of Immigration Appeals ("BIA"), which denied his applications for withholding of removal and deferral of removal under the Convention Against Torture ("CAT").

We previously granted Alcaraz's petition on two bases: (1) that the BIA erred in not requiring the DHS to make a good-faith effort to make available key government witnesses for Alcaraz's cross-examination; and (2) that the BIA erred in not deeming true Alcaraz's testimony before the Immigration Judge ("IJ") in light of the absence of any express adverse credibility determination from the IJ. *Alcaraz-Enriquez v. Sessions*, 727 F. App'x 260, 261 (9th Cir. 2018). However, the Supreme Court reversed our judgment upon the second basis for granting the petition,

vacated all of our decision, and remanded for further proceedings. *Garland v. Ming Dai*, 141 S. Ct. 1669 (2021).[1]

On remand, we again grant Alcaraz's petition for review in part.

# I

## A

Alcaraz was born in Mexico in 1979 but entered the United States illegally when he was eight years old. In July 1999, Alcaraz, who still lacked legal immigration status, was involved in a domestic incident with his live-in girlfriend, Esmeralda Alvarado, with whom Alcaraz had a child. This altercation led to a *nolo contendere* California felony conviction—but the facts of that altercation are subject to two competing narratives.

A probation report, written by a probation officer (who interviewed Alcaraz and Alvarado at the scene), recounted Alvarado's narrative. Under her version of events, Alcaraz had locked her in the bedroom, threatened to kill her if she tried to escape, punched and kicked her repeatedly, and forced her to have sex with him.

Alcaraz admitted to punching his girlfriend once but denied that it was "the way she describes." According to his version, relayed in his testimony before the IJ, Alcaraz witnessed his girlfriend physically abusing their young daughter, which led Alcaraz to punch his girlfriend in anger. Alcaraz also denied the other allegations against him,

---

[1] The Supreme Court heard *Garland v. Alcaraz-Enriquez* alongside *Ming Dai* and issued an opinion for both under the *Ming Dai* caption.

including the allegations that he locked her in her bedroom, threatened her life, and forced her to have sex with him. The probation officer interviewed Alcaraz multiple times, and the probation report discusses Alcaraz's contemporary statements, but the probation report does not include Alcaraz's version of events as Alcaraz testified before the IJ.

As a result of the incident, Alcaraz was charged with felony violations of California Penal Code ("CPC") § 273.5(a) (willfully inflicting corporal injury on a spouse or cohabitant), CPC § 236/237 (false imprisonment), and California Health & Safety Code § 1377(A) (possession of methamphetamine). He pleaded *nolo contendere* to all three charges on September 29, 1999, and was convicted and sentenced to two years in prison for each, to be served concurrently. In 2001, Alcaraz finished his prison sentence and was immediately transferred to immigration custody for deportation, which was accomplished that same year.

In 2003, Alcaraz reentered the U.S. illegally. In 2007, Alcaraz was arrested, detained, and prosecuted for illegal reentry. Alcaraz was ultimately convicted of illegally re-entering the United States and was again deported to Mexico. In 2013, while in Mexico, Alcaraz was involved in another physical altercation, this time with his neighbor. Alcaraz was arrested and spent two days in jail. According to Alcaraz, upon his release from jail, he returned to his apartment where he had just fought with his neighbor to collect his things, but the locks had changed. The police soon arrived. Alcaraz claims that five policemen beat him "all over" with "[t]heir clubs" for "about eight hours" before taking him to jail. Alcaraz subsequently pleaded guilty in Mexico to assaulting his neighbor.

On December 23, 2013, Alcaraz was caught trying to cross the border at the San Ysidro, California port of entry.

Immigration officials took him into custody and initiated the instant removal proceedings.

## B

On April 21, 2014, the Department of Homeland Security ("DHS") served Alcaraz with a Notice to Appear and initiated removal proceedings against him. The DHS filed a charge of inadmissibility against Alcaraz, claiming that he is removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II) based on his controlled substance conviction for possession of methamphetamine. Alcaraz conceded inadmissibility, but applied for asylum, withholding of removal, and protection under CAT. Alcaraz testified before the IJ, who did not make an adverse credibility determination. During those proceedings, Alcaraz objected to the introduction of the probation report produced after his 1999 convictions because the DHS did not make available "the person who made both statements here for cross-examination, and it's like [a] triple hearsay document." The IJ overruled that objection, commenting that hearsay evidence is permitted in immigration proceedings but not addressing whether the author of the report or the underlying declarant (Alcaraz's ex-girlfriend) should or could have been made available for cross-examination.

On December 5, 2014, the IJ issued a decision denying Alcaraz relief. First, the IJ held that Alcaraz's 1999 conviction for inflicting corporal injury on a cohabitant was "an aggravated felony as defined under [Immigration and Nationality Act] Section 101(a)(43)(F)," thus making him ineligible for asylum. Alcaraz does not appeal that finding.

Second, the IJ determined that the same 1999 conviction for inflicting corporal injury on a cohabitant also constituted a conviction for a "particularly serious crime" under

8 U.S.C. § 1231(b)(3), thereby making Alcaraz ineligible for withholding of removal.  In reaching this second finding, the IJ relied on the probation report which recounts only the girlfriend's narrative of the 1999 domestic incident, and not that of Alcaraz.  The IJ, crediting the probation report over Alcaraz's testimony, found that "the facts and circumstances surrounding the conviction involve the use of force and violence."  The IJ thus found that Alcaraz "was convicted of a particularly serious crime" and, for that reason, is "ineligible for consideration of withholding of removal."

Third, the IJ denied Alcaraz's application for deferral of removal under CAT, which required Alcaraz to establish "more likely than not that he would be tortured if returned to the country of removal."  Although the IJ found Alcaraz "credible as far as testifying to the harm he suffered while in the custody of the [Mexican] police," the IJ determined that Alcaraz had not proven that "the harm he suffered is tantamount to torture," nor that it is "more likely than not" to recur if he returns.  Alcaraz therefore failed to establish his entitlement to CAT protection.

On appeal, the BIA adopted and affirmed the decision of the IJ.[2]  Notably, the BIA specifically mentioned that the IJ "properly considered all evidence of record in assessing the seriousness of [Alcaraz's] conviction, including weighing and comparing [his] testimony at the hearing and the probation officer's report issued during the time of his conviction."  It further opined that "[i]n weighing the evidence of record, the Immigration Judge was not required to adopt the respondent's version of events over other

---

[2] Where the BIA adopts and affirms an IJ's decision with further reasoning, this court reviews both the decision of the IJ and the BIA.  *See Kwong v. Holder*, 671 F.3d 872, 876 (9th Cir. 2011).

plausible alternatives." Thereafter, Alcaraz filed his petition for review in this court.

In our now-vacated memorandum disposition, we granted in part Alcaraz's petition. We concluded that the BIA erred as to its finding that Alcaraz's assault was a "particularly serious crime" in two respects. First, we held that the agency acted contrary to law—8 U.S.C. § 1229a(b)(4)(B)—by not requiring that the DHS make a good faith effort to procure Alcaraz's ex-girlfriend and the author of the probation report for cross-examination, since the government had proffered the evidence of the two witnesses through its introduction of the probation report. Second, we applied our decades-old rule that required us to take a petitioner's factual contentions as true unless the agency made an explicit adverse credibility finding. We said:

> We have repeatedly held that where the BIA does not make an explicit adverse credibility finding, the court must assume that the petitioner's factual contentions are true. Here, the BIA erred when it credited the probation report over Alcaraz's testimony without making an explicit adverse credibility finding as to Alcaraz.

*Alcaraz-Enriquez*, 727 F. App'x at 261 (cleaned up). However, we denied the petition for review regarding Alcaraz's CAT claim.

The Supreme Court granted certiorari. *Barr v. Alcaraz-Enriquez*, 141 S. Ct. 222 (2020). The Court addressed only the second basis on which we granted Alcaraz's petition and reversed our decision. *Ming Dai*, 141 S. Ct. at 1681. The Court vacated all of our opinion and remanded the case for

further proceedings. *Id.* In so doing, the Court acknowledged our first basis for granting the petition:

> Separately, the Ninth Circuit held that the BIA erred by failing to give Mr. Alcaraz-Enriquez the opportunity to cross-examine the witnesses whose testimony was embodied in the probation report. . . . Remaining disputes over the merits . . . can be addressed on remand.

*Id.* at 1675 n.1.

## II

Preliminarily, we observe that the Supreme Court in *Ming Dai* did not alter the law as it relates to our holding as to the cross-examination of declarants to the probation report. However, because all of our prior opinion was vacated, we must address again Alcaraz's argument that he was denied a fair hearing because the government proffered the report even though Alcaraz was never given an opportunity to cross-examine the report's author or the declarant, his former girlfriend. We reaffirm our prior holding.

We review the BIA's conclusion, that Alcaraz's conviction constitutes a particularly serious crime, for abuse of discretion. *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015). "While we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether the BIA applied the correct legal standard." *Gomez-Sanchez v. Sessions*, 892 F.3d 985, 990 (9th Cir. 2018) (cleaned up). Thus, we must "ensur[e] that the agency relied on the 'appropriate factors' and 'proper evidence' to reach [its] conclusion."

*Avendano-Hernandez*, 800 F.3d at 1077 (alteration omitted) (quoting *Anaya-Ortiz v. Holder*, 594 F.3d 673, 676 (9th Cir. 2010)).

We previously held in *Anaya-Oritz* that an IJ may consider "all reliable information . . . in making a particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." 594 F.3d at 678 (quoting *Matter of N–A–M–*, 24 I. & N. Dec. 336, 342 (BIA 2007)). This reliability question is particularly important when the IJ is relying on a document that, like a probation officer's report, compiles impressions and testimony of other witnesses who may not testify themselves. *See Gardner v. Florida*, 430 U.S. 349, 360 n.10 (1977) (expressing concern that "critical unverified information" contained in probation reports "may be inaccurate and determinative in a particular case"); *Dickson v. Ashcroft*, 346 F.3d 44, 54 (2d Cir. 2003) ("Because the factual narratives contained in the [presentence report] are prepared by a probation officer on the basis of interviews . . . they may well be inaccurate . . . . Such a narrative is not a highly reliable basis for a decision of such importance as deportation.").

Separately, we have recognized that the evidence introduced into removal proceedings remains subject to other statutory and constitutional limitations. For instance, the admission of evidence must be "fundamentally fair." *Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009). And because Congress has specifically provided that an alien in removal proceedings must be given "a reasonable opportunity . . . to cross-examine witnesses presented by the Government," 8 U.S.C. § 1229a(b)(4)(B), we have held that the government deprives the alien of a fundamentally fair

hearing when it fails "to make a good faith effort to afford the alien a reasonable opportunity to confront and to cross-examine the witness against him." *Saidane v. INS*, 129 F.3d 1063, 1066 (9th Cir. 1997); *see also Cinapian*, 567 F.3d at 1074. To make this good faith effort, the government may not "effectively . . . shift the burden of producing its witness onto [the alien.]'" *Saidane*, 129 F.3d at 1065 (quoting *Cunanan*, 856 F.2d at 1375. This good faith requirement typically requires the government to make some affirmative effort to procure the live testimony of declarants. *See, e.g.*, *Saidane*, 129 F.3d at 1065 (holding that the hearing was fundamentally unfair because the INS "made no effort to call an admittedly available witness and relied instead on that witness's damaging hearsay affidavit").

These principles—reliable evidence and fundamental fairness—converge when it comes to Alcaraz's probation report. Despite its obligation under *Saidane*, the DHS made no effort—good faith or otherwise—to procure for Alcaraz's cross-examination the witnesses whose testimony was embodied in the probation report and upon whose testimony the BIA ultimately relied in denying his appeal. *See id.* This failure impugned the probation report's reliability and rendered the BIA's procedure fundamentally unfair. *Cf. Dickson*, 346 F.3d at 54 (recognizing that in some circumstances, probation reports may not offer a "highly reliable basis" on which to make important immigration decisions). So under the circumstances of this case—that is, in light of the BIA's failure to make a good-faith effort to let Alcaraz confront the witnesses against him—the BIA's reliance on the probation officer's report was error.

This error was also prejudicial. "To warrant a new hearing, the alien must also show prejudice, which means that 'the outcome of the proceeding may have been affected

by the alleged violation.'" *Cinapian*, 567 F.3d at 1074 (quoting *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000)). The BIA's multifactored analysis for determining whether a crime is "particularly serious" under 8 U.S.C. § 1231(b)(3)(B)(ii) invites the IJ to consider "the circumstances and underlying facts of the conviction." *Gomez-Sanchez v. Sessions*, 892 F.3d 985, 991 (9th Cir. 2018) (quoting *Matter of Frentescu,* 18 I. & N. Dec. 244, 247 (BIA 1982)). "[T]he record in most proceedings will have to be analyzed on a case-by-case basis." *Id.* (quoting *Matter of Frentescu,* 18 I. & N. Dec. at 247). Here, the IJ's determination that Alcaraz's domestic assault was a particularly serious crime relied in at least some measure on the aggravating facts of the probation report. If the probation report had been found to be unreliable on cross-examination, it is possible that the IJ could have found Alcaraz credible and, based on Alcaraz's version of events, found that Alcaraz's conviction was not for a particularly serious crime and that he was not barred from seeking withholding of removal.

Based on the BIA's failure to require the DHS to make a good faith effort to present the author of the probation report or the declarant for Alcaraz's cross-examination and the prejudice generated therefrom, we grant in part Alcaraz's petition and remand for a hearing that comports with the requirements of § 1229a(b)(4)(B).[3] *See Cinapian*, 567 F.3d

---

[3] Alcaraz's argument on appeal that the probation report was unreliable because it was never authenticated is forfeited because he did not raise that issue before the IJ. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). Alcaraz's argument that the agency erred by not finding the probation report unreliable simply because it contains hearsay is without merit. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 823 (9th Cir. 2003) ("[H]earsay is admissible in immigration

at 1074 ("Remand is generally necessary when an alien is prevented from reasonably presenting her case or when an IJ's actions prevent the introduction of significant testimony."). We express no opinion or finding as to whether Alcaraz may be found to be entitled to withholding of removal and make no determination as to the merits of Alcaraz's persecution claim.

## III

In *Ming Dai*, the Supreme Court addressed the other basis for which we previously granted Alcaraz's petition. In our now-vacated memorandum disposition, we held, based on our long-extant rule, that the BIA erred when it credited the probation report over Alcaraz's testimony without making an explicit adverse credibility finding as to Alcaraz. *Alcaraz-Enriquez*, 727 F. App'x at 261. The Supreme Court determined that our rule was not supported by the text of the Immigration and Nationality Act ("INA"). Instead, the Court laid out the proper procedure on petition for review when there is no explicit adverse credibility determination:

> The Ninth Circuit's deemed-true-or-credible rule cannot be reconciled with the INA's terms. Instead, immigration cases like these should proceed as follows. First, the fact-finder—here the IJ—makes findings of fact, including determinations as to the credibility of particular witness testimony. The BIA then reviews those findings, applying a presumption of credibility if the IJ did not

___

proceedings."); *Anaya-Ortiz*, 594 F.3d at 677–78. On remand, the BIA may also address potential forfeiture issues. *See Ming Dai*, 141 S. Ct. at 1675 n.1.

> make an explicit adverse credibility determination. Finally, the court of appeals must accept the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."

*Ming Dai*, 141 S. Ct. at 1681.

The Supreme Court's opinion in *Ming Dai* thus upends our second ground for granting the petition for review. The BIA did not err in failing to credit Alcaraz's version of events simply because the IJ made no explicit adverse credibility determination.

Although the Supreme Court reversed our prior disposition on this point and remanded, we need not engage in further analysis on this point at this time. As previously noted, we also granted Alcaraz's petition on entirely separate grounds: the agency's failure to make a good faith effort to procure the author of, and the declarant to, the probation report for cross-examination. On remand, cross-examination of the author of the probation report (or the declarant) could affect both the IJ's credibility determination as to Alcaraz and the BIA's decision to credit the probation report's version of events over Alcaraz's. Therefore, it would be futile for us to reexamine this issue on remand before a new hearing is held.

## IV

We also reaffirm our prior holding, which denied Alcaraz's petition as to his application for deferral of removal under CAT. As the IJ observed, although Alcaraz "has shown that he had been subjected to past harm by the police," he failed to show that "the harm he suffered is

tantamount to torture." *See In re J-E-*, 23 I. & N. Dec. 291, 298 (BIA 2002) (finding that because "the act must be *specifically intended* to inflict severe physical or mental pain or suffering," certain "rough and deplorable treatment, such as police brutality, does *not* amount to torture"). Alcaraz failed to prove that the BIA's finding that he suffered only from police mistreatment, and not "torture," was unsupported by substantial evidence. The BIA did not err in denying Alcaraz's application for deferral of removal under CAT, and we deny this portion of the petition for review.

## V

The petition for review is **GRANTED IN PART** and **DENIED IN PART**. The case is **REMANDED** for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.